No. 82,454

STATE OF KANSAS, *Appellee*, v. MARCUS RODRIGUEZ, *Appellant.*

(8 P.3d 712)

Opinion filed July 14, 2000.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is Marcus Rodriguez' direct appeal from his conviction and sentence for arson, a severity level 7, nonperson felony, K.S.A. 21-3718(a)(1) and (b)(3).

In June 1997, Rodriguez, Lance Arsenault, Jose Gutierrez, and Richard Golubski, while at the home of Arsenault's grandmother at 5210 Sloan, Kansas City, Kansas, tortured, burned, and killed a small Yorkshire Terrier named "Scruffy." The dog's jaws were pulled apart and he was shot with a pellet rifle, placed in a plastic

bag, doused with flammable liquid, set on fire while still alive, and hit repeatedly with a shovel. The body was tossed into the woods. The participants recorded their actions on videotape. The tape found its way to the police through a confidential informant. The police identified the four individuals from the tape. Rodriguez gave a formal statement in which he described what happened and admitted to personally setting the dog on fire and hitting it with a shovel.

Rodriguez pled guilty to a misdemeanor charge of cruelty to animals and was found guilty of arson by a jury in a trial where his statement and the videotape were admitted into evidence.

With a criminal history of C, the presumptive sentence for the arson conviction was probation with a possible underlying prison term of from 25 to 27 months. K.S.A. 21-4704. The State requested a departure and the trial court imposed an upward dispositional departure for the arson conviction, sentencing Rodriguez to 27 months' imprisonment.

The trial court granted probation for the misdemeanor cruelty to animals conviction with an underlying 12-month term in the county jail to run consecutive to the sentence for the arson conviction.

Rodriguez appealed, raising claims of insufficient evidence, erroneous jury instructions, improper admission of evidence, and prosecutorial misconduct and asserting that the reasons for the upward departure were neither substantial, compelling, nor supported by the evidence.

*Sufficiency of the evidence*

In reviewing a challenge to the sufficiency of the evidence, the standard is whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

The elements of the crime charged in this case are set forth in K.S.A. 21-3718(a)(1), as follows: "Arson is knowingly, by means of fire or explosive: "(1) Damaging any building or property in which

another person has any interest without the consent of such other person." It is a severity level 7, nonperson felony if the property is damaged to the extent of less than $25,000. K.S.A. 21-3718(b)(3).

Rodriguez contends there was insufficient evidence to show that the damage to the property was done without the consent of the owner of the property. He reasons that the State failed to show that someone other than Lance Arsenault had a property interest in Scruffy.

The owner of property may procure another to burn his or her property to the extent that such owner has the authority to do so. See *State v. Christendon*, 205 Kan. 28, 30-31, 468 P.2d 153 (1970). The fact that a person has an interest in property, however, does not give that person the right to burn the property if others who also have an interest therein have not given their consent. See *State v. Craig*, 124 Kan. 340, 341, 259 Pac. 802 (1927). Moreover, the consent of one of several property owners to the burning of jointly owned property does not make the act lawful as against the other property owners who did not consent. *Craig*, 124 Kan. at 342-44.

The State is not required under K.S.A. 21-3718(a)(1) to prove that the defendant damaged the property knowing who owned the property. *State v. Powell*, 9 Kan. App. 2d 748, 751, 687 P.2d 1375, *rev. denied* 236 Kan. 877 (1984). "The word knowingly' modifies the doing of the prohibited act and is used to distinguish intentional acts from accidental acts." 9 Kan. App. 2d at 751. Although the State is not required to prove that the defendant knew to whom the property belonged, it is required to prove that someone other than the defendant had an interest in the damaged property and that such person did not consent to the damaging of the property. See *State v. Johnson*, 12 Kan. App. 2d 239, 241-43, 738 P.2d 872, *rev. denied* 242 Kan. 905 (1987); *Powell*, 9 Kan. App. 2d at 751-52. The words "any interest" cover more than just a "fee simple interest" and include, for example, a leaseholder's interest in real property. 12 Kan. App. 2d at 241-43.

In accordance with the charge, the jury was instructed that to find Rodriguez guilty, it must find that on June 27, 1997, he intentionally damaged by fire the property in which Dizzy Whitmire, or Jennifer Remmers, or Sharon Madden had an interest; that he did

so without their consent; and that the damage was less than $25,000.

Whitmire testified that he owned Scruffy who had been their family dog for around 9 years. When his family had to move into a rental property that did not permit pets, his 19-year-old granddaughter, Jennifer Remmers, took Scruffy with her and moved in with her boyfriend's mother, Sharon Madden. Whitmire testified that Remmers was to care for the dog until the Whitmire family found a place where they could keep him, but that he was still the owner of the dog and that he never gave permission for Rodriguez and the other participants to set Scruffy on fire.

Sharon Madden, grandmother of Arsenault, testified for the defense and agreed Remmers brought Scruffy with her when she moved in. She said that Arsenault and another boy primarily cared for the dog. She did not consider Whitmire to be the dog's owner because he did not buy it food or take care of it. She thought she was part owner as was Remmers, but she did say that she did not give Rodriguez permission to burn Scruffy.

Rodriguez' contention that he thought Arsenault had an interest in the dog and that he was unaware of any other possible interest holders is not supported by the evidence or his own statement to the police in which he said he did not know who the dog belonged to but guessed it belonged to the "family" at 5210 Sloan. He was not sure if Arsenault lived at 5210 Sloan. At no time during the interview or the recorded statement did Rodriguez ever indicate that he thought the dog was a stray or not owned by anyone, or that it belonged to his coparticipants in the burning.

Clearly, there was sufficient evidence that Whitmire, Remmers, and/or Madden had a property interest in the dog, that Rodriguez set the dog on fire with the vague notion that there were individuals beyond his three cohorts who had a property interest in the dog, and that he committed the burning without the permission of such interest holders. The State did not have to prove that Rodriguez positively knew the identities of all the individuals that had a property interest in Scruffy. There is substantial evidence from which a rational factfinder could find Rodriguez guilty of arson.

*The jury instructions*

Rodriguez next argues jury instruction Nos. 7 and 8 were erroneous and confused and misled the jury as to what had to be proved to convict him of arson. Instruction No. 7 stated:

"Property means anything of value tangible or intangible, real or personal. A dog shall be considered as personal property."

Instruction No. 8 stated:

"The State is not required to prove that the defendant knew the owner of the property. The State is required to prove that the property was owned at least in part by someone other than Lance Arsenault, Richard Golubski, Jose Gutierrez, and Marcus Rodriguez."

The defense objected to No. 7, questioning whether an abandoned dog could be personal property, and to No. 8 on the ground because it would vitiate his defense of consent that the dog was owned either by no one or by a coparticipant in the burning.

On appeal, Rodriguez argues that the instructions did not fairly state the law and were contrary to the PIK instructions because they instructed the jury to ignore the consent element of the charge and vitiated his defense that he was given consent to burn the dog.

Where a party objects to a jury instruction prior to the jury retiring to consider its verdict, as occurred in this case, the reviewing court is required to consider the instructions as a whole without isolating any one instruction, and, if the instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, then they do not constitute reversible error even if they are in some small way erroneous. See *State v. Borman*, 264 Kan. 476, 480, 956 P.2d 1325 (1998); *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998).

Instruction No. 6 given by the trial court followed PIK Crim. 3d 59.20 and read as follows:

"The defendant Marcus Rodriguez, is charged in Count I with the crime of [a]rson. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant, Marcus Rodriguez, intentionally damaged the property in which Dizzy Whitmire or Jennifer Remmers or Sharon Madden, had an interest, by means of fire;

"2. That the defendant, Marcus Rodriguez, did so without the consent of Dizzy Whitmire or Jennifer Remmers or Sharon Madden; and

"3. That the property damage was less than $25,000; and

"4. That this act occurred on or about the 27th day of June, 1997, in Wyandotte County, Kansas."

Clearly, the jury was instructed on the consent element of the charge in accordance with the PIK instruction and could not have been misled in that regard.

The first sentence of instruction No. 7 defining property is not in dispute and was taken from K.S.A. 21-3110(16) which, for purposes of the criminal code states: "Property' means anything of value, tangible or intangible, real or personal." The second sentence is derived from K.S.A. 79-1301 which, for tax purposes, defines a dog as personal property, stating: "A dog shall be considered as personal property and have all the rights and privileges and be subject to like lawful restraints as other livestock." This definition was also part of a previous version of K.S.A. 79-1301 and has been discussed in two criminal cases, *State v. Fisher*, 142 Kan. 627, 50 P.2d 983 (1935), which involved the killing of a dog, and *State v. Fenske*, 144 Kan. 560, 61 P.2d 1368 (1936), in which the court stated it had no difficulty finding that a dog is personal property for purposes of larceny regardless of whether its owner had the animal listed on the tax rolls. 144 Kan. at 561-62.

Rodriguez complains that instruction No. 7 vitiated the possible defense that the dog belonged to no one.

The question of whether the dog was a stray or owned by someone was a factual issue upon which both sides presented evidence and argument. This was an issue which was resolved by the jury upon a proper instruction. Instruction No. 7 was not erroneous.

Instruction No. 8 was not erroneous in any way which prejudiced the defendant. Its text is clearly supported by the case law described under the first issue and is supported by the most recent Comments to PIK Crim. 3d 59.20 (1996 Supp.) which state: "Under K.S.A. 21-3718(a)(1), the State must prove that the defendant

knowingly damaged a building and that another person had some interest in that building. The State is not required to prove the defendant knew who owned the building. *State v. Powell*, 9 Kan. App. 2d 748, 687 P.2d 1375 (1984)." K.S.A. 21-3110(13) defines "[o]wner'" as "a person who has any interest in property" and the jury was later informed of this when, during jury deliberations, the jury referenced a comparison of instructions 6 and 8 and asked if "had an interest" proves "ownership." Though the State will not have to prove strict "fee ownership" in every case, see *Johnson*, 12 Kan. App. 2d 239, 241-43 (fee interest not required, leasehold sufficient) and see also K.S.A. 21-3718(a)(1) (referring to "any interest" in the property), in this case the statement in the second sentence of Instruction No. 8 that the State had to prove the dog was "owned" at least in part by someone other than the four participants was certainly not erroneous in any way prejudicial to Rodriguez. The instructions were not erroneous.

*Admission of evidence*

Rodriguez next argues the trial court abused its discretion by permitting the State to introduce a copy of the front side of the second amended information. The admission of evidence lies within the sound discretion of the trial court. Judicial discretion is abused when judicial action is fanciful, arbitrary, or unreasonable. *State v. Gardner*, 264 Kan. 95, 103-04, 955 P.2d 1199 (1998).

The information showed the two initial counts against the defendant, count I being the arson charge and count II being the misdemeanor cruelty to animals charge to which Rodriguez had pled guilty. At the bottom of the charge it stated "contrary to the statute in such case made and provided," followed by assistant district attorney Morehead's signature. Rodriguez' conviction on the cruelty to animals charge was no secret to the jury and was, in fact, used by defense counsel as part of his defense strategy.

Defense counsel had argued throughout the trial that all the jury would see and hear about at trial was cruelty to an animal, including cruelty by fire, and that Rodriguez had already pled guilty to the proper charge, but that an arson had not occurred. To counter this tactic, the prosecutor wished to show the text of both charges so

the jury could see that the elements were different and that the cruelty to animals charge did not include an allegation of burning.

On appeal, Rodriguez argues that admission of the document, with Morehead's signature at the bottom, permitted the prosecutor to inject herself as an expert witness on the law of arson. This was not the basis for the objection in the trial court, and, in any event, this argument lacks merit. The jury was properly instructed on the elements of arson and admission of the document did not constitute the admission of expert testimony. The trial court did not abuse its discretion in permitting admission of the front of the second amended information.

Rodriguez' additional argument is that the prosecutor's signature permitted her to personally vouch as a witness for the defendant's guilt. This argument was offered in support of Rodriguez' motion for mistrial at the close of the case. The trial court ruled the information merely stated the allegations against the defendant and refused to grant a mistrial.

A trial court may declare a mistrial if prejudicial conduct makes it impossible to proceed with the trial without injustice to either the prosecution or the defense. K.S.A. 22-3423(1)(c). A trial court's ruling on a motion for mistrial will not be disturbed absent a clear showing of abuse of discretion. The defendant has the burden of showing substantial prejudice before an appellate court will find an abuse of discretion. *State v. Vontress*, 266 Kan. 248, Syl. ¶ 2, 970 P.2d 42 (1998). Merely showing the jury the charging document did not amount to personal vouching by the prosecutor and did not cause substantial prejudice in this case. This issue shows no error.

*Prosecutorial misconduct*

Rodriguez also asserts he was denied a fair trial by reason of prosecutorial misconduct. In this regard, Rodriguez first repeats his argument that the introduction of the second amended information is sufficient prosecutorial misconduct to violate his right to a fair trial. This argument has been previously addressed.

The main thrust of Rodriguez' prosecutorial misconduct argument is that the prosecutor's closing argument amounted to ac-

cusing defense counsel of being deceptive, exceeded the bounds of fair argument, and involved comments so gross and flagrant as to prevent a fair trial. Some of the comments were objected to, some were not.

We need not again set forth in full the rules for reviewing allegations of misconduct during closing arguments which were stated in *State v. McCorkendale*, 267 Kan. 263, Syl. ¶¶ 5-9, 979 P.2d 1239 (1999). As explained in *McCorkendale*, if the erroneous statement rose to the level of denying a defendant a fair trial, then reversible error occurs despite the lack of a contemporaneous objection.

We must scrutinize each case on its particular facts to determine whether prosecutorial misconduct is harmless error or plain error when viewed in the light of the trial record as a whole. In doing so, we are mindful that a prosecutor is entitled to considerable latitude in arguing the case to a jury. Moreover, as we said in *State v. Follin*, 263 Kan. 28, 45, 947 P.2d 8 (1997), " '[t]here is no prejudicial error where the questionable statements of a prosecuting attorney are provoked and made in response to previous arguments or statements of defense counsel.' "

The comments about which Rodriguez now complains are italicized in the following quotes which also set forth some surrounding parts of the record.

*"You know, Mr. Rodriguez wants to you to believe that it is a defense that he didn't know who the owner was and as Judge Lampson just instructed you, I am not required to prove that the defendant knew who owned the dog."* This comment was made during the State's initial closing argument, was not objected to, and was in response to part of defense counsel's general trial strategy. The State was correct that it did not have to prove that Rodriguez knew who owned the dog and these unobjected-to comments were not so gross and flagrant as to deny Rodriguez a fair trial.

Later, during the prosecutor's rebuttal closing argument, the following was said:

"[MOREHEAD:] And he, Mr. Dunn, gets up and says, well, the State's confused about who the owner is. You know, Sharon Madden wasn't my witness. She was their witness and it's when I filed that third amended information, the law allows for the charge to be amended clear up until you go up there and deliberate

and Mr. Dunn knows that. And do you know we've been using the term owner here and that's not what the statute and that's not what Instruction No. 6 says. It actually says that this property—that someone had an interest in it. Mr. Dunn says, well, is a bird flying outside property? No, unless somebody has an interest in it. If it's somebody's parakeet or pet bird, then yes."

"MR. DUNN: . . . I object to this. This is totally outside the whole world.

"THE COURT: Overruled, counsel. She is quoting directly from the instructions.

"MS. MOREHEAD: Thank you, judge.

"THE COURT: You [referring to defense counsel] went into this as well.

. . . .

"MS. MOREHEAD: *It becomes property when someone takes an interest in that property.* If I get old stray dog Jake and I start taking care of him and I start feeding him and I start considering him mine, then I have an interest in that property. Yeah, he was a stray at one point but now I have an interest in that. Now he is property. He becomes property. *Mr. Dunn says the way to show ownership is to bring in a title and bill of sale and tax receipt. How many people do you know that own cars that don't have a bill of sale, that don't have a tax receipt. . . . You know that stuff would help show ownership but it's not required.*

. . . .

"*. . . When you go to a magic show, a magician comes out and he throws something down on the ground and all of the sudden a big puff of smoke comes up. And all of the sudden something appears that wasn't there before. And the magician has thrown that something down on the ground to make that big puff of smoke to divert your attention.*

"MR. DUNN: I object to this argument, Judge.

"THE COURT: Overruled.

"MS. MOREHEAD: *The reason he's done that and made that something appear is to create an optical illusion to make you think he's done some magic trick and he hasn't done a magic trick. He threw that stuff down to divert your attention and you know, that's what this ownership argument is consistent with. This is a big puff of smoke that's been blown up in your face. You know, Jose Guitierrez, he can't—he didn't ever assert that Dizzy—anyone other than Dizzy Whitmire was the owner. He admitted to you that. And in fact Marcus Rodriguez did not bring that up to Detective Seifert. Never mentioned that. That's a big puff of smoke.*" (Emphasis added.)

The above comments were a response to defense counsel's arguments to the jury that the State itself was confused as to who owned the dog, that the State had failed to show absolutely who owned the dog by failing to bring in tax receipts and such, and that Rodriguez believed either that the dog was a stray or that Arsenault owned the dog.

Defense counsel pointed to the fact there were three amended informations, each one adding a name to the list of interest holders. Defense counsel argued that the amendments to the informations showed that "[t]he State itself [was] hopelessly confused as to the owner of this dog or if there was one" and that this alone provided reasonable doubt. He said that because arson is a property crime, that was the "whole problem with [the] prosecution." He concluded by saying that if the jury was as confused as the State about who, if anyone, owned the dog, then it needed to acquit Rodriguez.

The prosecutor's response to such comments were not beyond the bounds of legitimate rhetoric and the puff of smoke argument was a response to defense counsel's strained interpretation of the evidence regarding Rodriguez' beliefs about who, if anyone, owned the dog. First, the only direct evidence of Rodriguez' belief of ownership came from his statements to the police which showed that he believed the dog was probably a family dog that belonged to the people who lived at 5210 Sloan, but he was not sure if Arsenault lived there. He never told the police that he thought the dog was a stray or that he thought it belonged to Arsenault. Second, despite defense counsel's focus on the absence of tax receipts and bills of sale or title, the State did not need to present such items to prove who owned the dog. Finally, the State's act of amending the information to add possible interest holders did not equate with reasonable doubt.

During closing argument, an attorney is given wide latitude in the language and manner of presenting argument and may indulge in impassioned bursts of oratory and may use picturesque speech as long as he or she does not refer to facts not disclosed by the evidence. *State v. Duke*, 256 Kan. 703, 719-20, 887 P.2d 110 (1994). In prior cases, analogies similar to the prosecutor's "puff of smoke" argument in this case have been found to be within the permissible bounds of rhetoric and not gross or flagrant.

In *Duke*, 256 Kan. 703, defense counsel attempted in closing argument to cast doubt on the veracity of the State's witnesses and the quality of the police investigation. In response, the prosecutor told the jury there had been " 'a lot of smoke in this case . . . a lot of smoke that was given to you in the argument of the defendant

when he closed his case' " and, after objection to this argument was overruled, the prosecutor continued, " 'It's smoke and mirrors. And when you have that, you get illuminations and things . . . trying to confuse you.' " 256 Kan. at 718. When the defendant argued on appeal that the comments implied to the jury that defense counsel was trying to intentionally mislead the jury, we found that the comments were within the permissible bounds of rhetoric. 256 Kan. at 719-20.

In *State v. Baker*, 249 Kan. 431, 447, 819 P.2d 1173 (1991), we concluded that the prosecutor's closing argument which included comments that the "nice boy image" that the defense was trying to give the jury was "nonexistent," and "[i]t's a smoke screen" was neither gross nor flagrant and had not deprived the defendant of a fair trial.

Although "smoke screen" types of argument have been noted in some cases where the prosecutor's overall arguments were found improper, the comments were not found improper merely because of the smoke screen references.

For example, Rodriguez relies on *State v. Lockhart*, 24 Kan. App. 2d 488, 490, 947 P.2d 461, *rev. denied* 263 Kan. 889 (1997), where the prosecutor had commented in closing argument that the defense had attempted to penetrate the facts with "fog, smoke, or mirrors." Although this comment was noted in the opinion, it was not the fundamental basis for defendant's argument on appeal, nor for the Court of Appeals' decision that the prosecutor had made improper comments. A new trial was ordered because the Court of Appeals found "the prosecutor's comments referring to the defendant and the defense counsel as liars to be serious breaches of the standard of fair comment permitted to lawyers when making closing arguments"; that the prosecutor showed ill will; that credibility was extremely important in the case; and that under the circumstances, the comments were so gross and flagrant as to deny the defendant a fair trial. 24 Kan. App. 2d at 492-93.

In *State v. McCray*, 267 Kan. 339, 348-49, 979 P.2d 134 (1999), the prosecutor made "smoke screen" and "be careful of the smoke" comments, but they were made in the course of making more egregious comments which tended to attack defense counsel. The pros-

ecutor warned the jury to " '[b]e careful of the deception' " and insinuated that defense counsel had tried to " 'fool,' " " 'intimidat[e],' " and " 'scare' " the jury. 267 Kan. at 348-49.

In reviewing the comments, the *McCray* court discussed *Lockhart* and another case where the prosecutor had said that his own witnesses had told the truth and that the defendant's whole game was to confuse the jury. The *McCray* court then concluded that "some of the prosecutor's remarks . . . were outside the bounds of proper argument" but determined there was little likelihood that the remarks had changed the result of the trial. 267 Kan. at 351.

In the present case, the "puff of smoke" language was not part of an overall improper approach to closing argument as occurred in *McCray* and was not accompanied by accusations that defense counsel or the defendant had lied, as occurred in *Lockhart*. We hold the comments were a proper response to the defense's tactics and arguments and were not improper.

Rodriguez also notes that the prosecutor's comments were part of the grounds for his motion for mistrial which the trial court denied. Based on the standard stated earlier for reviewing the denial of a motion for mistrial, denying such motion was not an abuse of discretion.

*Imposition of an upward dispositional departure*

Finally, Rodriguez asserts the reasons given by the trial court for imposing an upward dispositional departure from presumptive probation to prison for his arson conviction were neither substantial and compelling nor supported by the evidence.

A claim that the departure factors relied on by the trial court are not substantial and compelling reasons for departure is a question of law subject to unlimited review. Where a party claims that the reasons given for departure were not supported by the evidence, this court must consider whether there is substantial evidence supporting the trial court's findings or whether the findings are clearly erroneous. *State v. Tiffany*, 267 Kan. 495, Syl. ¶ 4, 986 P.2d 1064 (1999). The trial court's comments at the time of sentencing govern as to the reasons for departure. 267 Kan. 495, Syl. ¶ 5. In reviewing a departure sentence, the reviewing court asks

whether the particular reasons given are valid departure factors and whether the reasons given, as a whole, are substantial and compelling reasons for departure in a given case. 267 Kan. 495, Syl. ¶ 6. It is not required that all of the reasons given for departure by the sentencing court support the departure; as long as one or more of the factors relied upon by the sentencing court is substantial and compelling, the departure sentence will be affirmed. *State v. Ippert*, 268 Kan. 254, 261, 995 P.2d 858 (2000). The term "substantial" refers to something real and of substance and not imagined or ephemeral, while the term "compelling" implies that the court is forced by the facts of a case to go beyond what is ordinary or to leave the status quo. *State v. Mitchell*, 262 Kan. 434, 446, 939 P.2d 879 (1997).

The statutory list of aggravating and mitigating factors for departure in K.S.A. 21-4716 is nonexclusive. *Tiffany*, 267 Kan. 495, Syl. ¶¶ 7 and 8. The trial court may use other, nonstatutory factors as long as they are supported by the evidence and consistent with the intent and purposes of the guidelines. 267 Kan. 495, Syl. ¶ 8. It has been said that nonstatutory factors for departure should be subject to greater scrutiny than statutory factors. See *State v. Bailey*, 263 Kan. 685, 698-99, 952 P.2d 1289 (1998).

The trial court in this case relied on more than one factor in departing. Although Rodriguez says there were two factors, the sentencing court stated four: (1) nonamenability to probation; (2) the arson in question was outside the normal range of what arson is (Rodriguez describes this as a nonstatutory "atypical harm" factor); (3) the actions manifested excessive brutality; and (4) the defendant took advantage of a helpless and trusting creature.

There is substantial evidence to justify the trial court's ruling concerning the first factor. The court told Rodriguez that he needed to make an appointment with Tim Nick in the probation office for a presentence investigation. At the sentencing hearing there was testimony that Rodriguez had failed to report to the intensive supervision office as he had been ordered or to the office for the presentence investigation interview. Also at sentencing, the prosecutor presented evidence through the testimony of Rodriguez' probation supervisor that Rodriguez was currently on mis-

demeanor probation for sexual battery and that revocation proceedings were in motion in that case due to Rodriguez' noncompliance with numerous conditions of his probation, including failure to report to the probation officer and failure to provide a DNA sample to the Kansas Bureau of Investigation.

At the sentencing, the prosecution also presented the testimony of Officer Therese Moroney that approximately 2 weeks after defendant's conviction in the arson case, he became involved in an altercation at a mall in which the window of a car was broken and someone was battered. The officer testified that Rodriguez smelled of alcohol at the time and that charges were pending against him for the incident.

In ordering the dispositional departure, the court found the primary reason to be Rodriguez' nonamenability to probation as demonstrated by Rodriguez' disregard of the court's previous orders. The trial court also made other findings which would be sufficient to uphold the departure which we need not recite. There was clearly substantial evidence to support the trial court's conclusion that Rodriguez was not amenable to probation.

Rodriguez concedes that a lack of amenability to probation as indicated by a defendant's prior conduct, particularly a defendant's demonstrated attitude when given prior opportunities at probation or other forms of supervised release, can be a substantial and compelling factor to justify an upward dispositional departure. See *State v. Yardley*, 267 Kan. 37, 44, 978 P.2d 886 (1999); *State v. Sewell*, 25 Kan. App. 2d 731, Syl. ¶ 1, 971 P.2d 1201 (1998); *State v. Meyer*, 25 Kan. App. 2d 195, 960 P.2d 261, *rev. denied* 265 Kan. 888 (1998); *State v. Billington*, 24 Kan. App. 2d 759, 763, 953 P.2d 1059 (1998); *State v. Trimble*, 21 Kan. App. 2d 32, Syl. ¶ 6, 894 P.2d 920 (1995). Rodriguez asserts, however, that the trial court failed to consider placement at Labette Conservation Camp as an alternative to departure. Though K.S.A. 1999 Supp. 21-4603d does require consideration of placement at Labette before imposing a dispositional departure in a presumptive probation case, it does not require placement at Labette if space is not available there. The sentencing court here clearly considered Labette and stated on the

record why Rodriguez could not be placed there—the lack of available space.

Rodriguez also relies on the language of K.S.A. 21-4728 which states that a sentencing court "should consider in all cases a range of alternatives with gradations of supervisory, supportive and custodial facilities at its disposal so as to permit a sentence appropriate for each individual case." Pursuant to K.S.A. 21-4728, Rodriguez asserts that the trial court should have considered the possibility of placing him on probation with highly restrictive probation conditions. This argument must also fail in this case.

The trial court expressed straightforwardly that a prison sentence was appropriate instead of probation because it did not believe Rodriguez could be trusted to abide by probation on any terms, stating, "I believe that Mr. Rodriguez will be in violation of my orders, no matter what they are, within a week." The court then explained why it believed this, and the evidence placed before the court supported this conclusion. The court also explained that it believed Rodriguez needed to experience prison time in this case, followed by counseling to learn to appreciate the need to reform his conduct or else he would one day find himself a permanent resident of the criminal justice system and perhaps find himself in prison for life. The court clearly considered Rodriguez' individual circumstances and determined that probation of any sort was not going to work and was not going to help him in the long run.

Rodriguez' nonamenability to probation alone justifies the trial court's imposition of the upward dispositional departure such that we need not address the other departure factors listed by the trial court.

Affirmed.