NOT DESIGNATED FOR PUBLICATION

No. 123,121

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN A. FITZGERALD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed March 18, 2022. Affirmed in part, sentences vacated, and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and HURST, JJ.

PER CURIAM: In four separate cases filed between 2019 and 2020, the State charged Brian A. Fitzgerald with multiple counts of breach of privacy, stalking, violations of a protective order, and a single count of harassment by telecommunication device—related to Fitzgerald's conduct towards one particular person. After the court accepted Fitzgerald's pleas, the four cases were consolidated under K.S.A. 22-3203 and K.S.A. 22-3202(1). Before he could be sentenced on these four consolidated cases— Fitzgerald was again arrested on several similar charges. Based on these new offenses

1

and Fitzgerald's pattern of behavior, the district court determined that Fitzgerald was not amenable to probation and sentenced him to a total sentence of 84 months' imprisonment for the four consolidated cases.

Fitzgerald contends that the district court's application of K.S.A. 2019 Supp. 21-6819(b)(4) violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by depriving him of the full benefit of what is commonly referred to as the "double rule," because it caps prison sentences in cases where multiple counts are brought within a single complaint or indictment, but not in cases when multiple counts are consolidated for trial and, thus, treats similarly situated defendants differently. Fitzgerald also contests the district court's decision to impose an upward departure at sentencing. This court vacates his felony sentences and remands for resentencing consistent with this opinion but affirms the district court's decision to impose an upward departure.

FACTUAL AND PROCEDURAL BACKGROUND

Between late 2019 and early 2020, the State charged Fitzgerald, in four separate cases, with several charges stemming from his harassment and stalking of his ex-girlfriend. Fitzgerald entered a plea agreement under which the State agreed to dismiss several charges if he pleaded guilty to the following:

- 19 CR 3411:
    - Stalking (2 counts), K.S.A. 2019 Supp. 21-5427(a)(1), (b)(1)(A), Class A Person Misdemeanors;
    - Harassment by Telecommunication Device, K.S.A. 2019 Supp. 21-6206(a)(1)(B), Class A Nonperson Misdemeanor;

2

- 19 CR 3846:
    - Stalking (2 counts), K.S.A. 2019 Supp. 21-5427(a)(3), (b)(3)(A), Level 9 Nondrug grid, Person Felonies;
- 20 CR 375:
    - Breach of Privacy (2 counts), K.S.A. 2019 Supp. 21-6101(a)(8), (b)(2)(A), Level 8, Nondrug grid, Person Felonies;
    - Stalking, K.S.A. 2019 Supp. 21-5427(a)(3), (b)(3)(A), Level 9, Nondrug grid, Person Felony;
- 20 CR 442:
    - Violation of Protective Order (3 counts), K.S.A. 2019 Supp. 21-5924(a)(6), (b)(1), Class A, Person Misdemeanors.

In exchange for his pleas, the State agreed to (1) dismiss the remaining charges; (2) recommend the district court impose the middle number in the grid box for each felony count; (3) recommend 12 months in jail for each misdemeanor count; (4) follow the presumption of probation; and (5) recommend 19 CR 3846 run consecutive to 20 CR 375; 19 CR 341 to run concurrent with 20 CR 442; and 19 CR 3411 and 20 CR 442 to run concurrent with cases 19 CR 3846 and 20 CR 375.

In May 2020, Fitzgerald signed the plea agreement and a waiver of his rights. The plea agreement provided that if Fitzgerald failed to abide by his bond conditions prior to sentencing, the State reserved the right to revoke the sentencing agreement and seek a new sentence. At the plea hearing, the district court accepted Fitzgerald's pleas, adjudged him guilty of the agreed upon crimes, and continued his release on an electronic monitoring device. That same day, upon joint request by the parties, the district court ordered the consolidation of Fitzgerald's cases "for trial" pursuant to K.S.A. 22-3203 and K.S.A. 22-3202(1).

In the short time between his plea hearing and sentencing date, Fitzgerald did not alter his behavior or comply with the plea agreement, but continued his pattern and was arrested on two new cases involving aggravated burglary, aggravated assault, criminal threat, domestic violence, criminal damage to property, domestic violence battery, stalking, interfering with a law enforcement officer, and six counts of stalking. Based on these new charges, the State moved for an upward dispositional departure, arguing that Fitzgerald's disregard for court orders, repeated bond violations, and commission of new crimes demonstrated that he was not amenable to probation.

At sentencing in July 2020, the State presented evidence supporting its motion for an upward departure, including testimony from witnesses, a telephone call audio recording, a victim impact statement from one victim, and a handwritten letter from another victim. Fitzgerald argued against the imposition of an upward dispositional departure, contending it was inappropriate because of his addiction and mental health issues. But the district court disagreed with Fitzgerald, noting:

- his disregard of the district court's order to have no contact with the alleged victim, either directly or through third parties;
- his violations of the conditions of his bond; and
- his violations of pretrial service requirements.

The district court further explained that the alleged victim and the public's safety would be at risk if Fitzgerald were placed on probation.

Ultimately, the district court found Fitzgerald was not amenable to probation and ordered the aggravated grid box jail sentence for each felony he pleaded guilty to. The district court applied the double rule to the felony charges in 20 CR 375, but did not apply the double rule to Fitzgerald's total sentence for the consolidated felony cases. The district court sentenced Fitzgerald to 30 months' imprisonment on 20 CR 375; 18 months'

imprisonment on 19 CR 3846; 36 months' imprisonment on 19 CR 3411; and, 36 months' imprisonment on 20 CR 442, to be served concurrent with 19 CR 3411, for a controlling sentence of 84 months' imprisonment.

Fitzgerald appealed. But while his case was pending, and after briefing was complete, another panel of this court decided *State v. Dixon*, 60 Kan. App. 2d 100, 492 P.3d 455, *rev. denied* 314 Kan. 856 (2021), a case finding that limiting the double rule to felonies charged in a single complaint or case violated the equal protection rights of defendants who face multiple felony charges in multiple cases consolidated for trial. After *Dixon* was decided, Fitzgerald filed a pro se motion seeking to file a supplemental brief echoing the constitutionality claims in *Dixon*. This court ordered the parties to submit briefing on the matter, and the State and Fitzgerald submitted a supplemental brief addressing *Dixon*.

### DISCUSSION

On appeal, Fitzgerald originally argued that the district court erred by sentencing him to an upward dispositional departure in two ways: (1) by violating his Sixth and Fourteenth Amendment rights by not requiring the State to prove facts supporting the departure beyond a reasonable doubt; and (2) by finding substantial, compelling reasons supported an upward sentencing departure. After supplemental briefing, Fitzgerald included in his argument that the double rule, as applied to the sentencing in his cases, violated his equal protection rights under the Fourteenth Amendment to the United States Constitution. Finding Fitzgerald's objections to the district court's imposition of an upward departure sentence preserved, this court will first dispose of those claims. As explained herein, Fitzgerald's objections to the imposition of an upward departure lack merit, but this court finds his equal protection claim regarding the application of the double rule persuasive.

I.      *The district court did not err by imposing an upward departure at sentencing.*

Fitzgerald's first argument that the district court's upward departure in his sentence violated his constitutional rights under the United States Supreme Court's precedent in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), is unsupported by *Apprendi*, and contrary to longstanding Kansas Supreme Court precedent. See e.g., *State v. Carr*, 274 Kan. 442, 452, 53 P.3d 843 (2002) (finding that *Apprendi* does not apply to the district court's decision to give a "dispositional departure prison sentence rather than to grant probation"). *Apprendi* does not prohibit district courts from exercising sentencing discretion within statutory limits. See *Apprendi*, 530 U.S. at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing judgment with the range prescribed by statute."). This court is bound by the Kansas Supreme Court precedent set forth in *Carr* and finds that the district court's upward departure did not violate Fitzgerald's Sixth or Fourteenth Amendment rights.

Fitzgerald also claims the court lacked substantial, compelling reasons to impose imprisonment rather than probation. This court reviews a challenge to the dispositional departure by first examining the record to determine if substantial, competent evidence— which is evidence that is legal and relevant that a reasonable person could use to support a conclusion—supports an aggravating factor permitting departure. See *State v. Schultz*, 289 Kan. 334, 340, 212 P.3d 150 (2009); see also K.S.A. 2019 Supp. 21-6815(a) (providing that a district court may impose an upward departure if it "finds substantial and compelling reasons to impose a departure sentence"). If this court finds substantial, competent evidence supporting an aggravating factor, then it will only reverse the district court's decision if it finds the court abused its discretion. See *State v. Bird*, 298 Kan. 393, 397-98, 312 P.3d 1265 (2013). A district court abuses its discretion when it acts

6

arbitrarily or unreasonably, or when its action is based on an error of law or an error of fact. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

Upon the State's motion for an upward dispositional departure the district court heard evidence and arguments at the sentencing hearing from four witnesses, an audio recording of an alleged phone call involving Fitzgerald, and took written statements from alleged victims. After hearing all the evidence, the district court found that Fitzgerald was not amenable to probation and he was a risk to public safety based on his disregard for protective orders, the district court's orders not to contact alleged victims, and being arrested for additional charges—including a felony charge—while on bond.

Fitzgerald failed to clearly explain how the district court allegedly abused its discretion—but he appears to argue its decision was arbitrary or not supported by facts. Notably, Fitzgerald does not allege that any of the facts the district court used to support its decision are incorrect; he merely argues that objectives of treating mental illness and addiction are better served by Fitzgerald receiving probation rather than imprisonment. But the district court here provided substantial, compelling reasons for its departure— Fitzgerald's nonamenability to probation. See *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008) (a factor is substantial and compelling if it is "real, not imagined, and of substance, not ephemeral" and is of a nature that forces the court "to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.").

"Nonamenability to probation" is a substantial and compelling reason, if supported by substantial, competent evidence, to impose imprisonment rather than probation. *State v. Snow*, 282 Kan. 323, 345-46, 144 P.3d 729 (2006) *disapproved on other grounds by State v. Guder*, 293 Kan. 763, 267 P. 3d 751 (2012); *State v. Rodriguez*, 269 Kan. 633, 646, 8 P.3d 712 (2000). A district court may properly find "nonamenability" to probation when "a defendant's demonstrated attitude when given prior opportunities at probation or other forms of supervised release" convinces the court that the defendant should not be

granted the grace of probation. *Rodriguez*, 269 Kan. at 646-47. Here, the district court carefully and thoroughly explained its reasoning on the record as to why it believed, based on the evidence, that Fitzgerald was not amenable to probation. That reasoning included Fitzgerald's repeated and escalating failure to follow the court's orders, his commission of new crimes, and the victim's safety concerns given Fitzgerald's continued efforts to contact the victim. Under these circumstances, this court cannot say that the district court abused its discretion in imposing an upward departure in Fitzgerald's sentence. The district court's upward departure is affirmed.

II.     *The district court erred by not applying the double rule to Fitzgerald's consolidated cases.*

In his final claim, relying heavily on the recently decided *Dixon*, 60 Kan. App. 2d at 130-40, Fitzgerald contends that the double rule arbitrarily treats two classes of defendants differently. The commonly referred to double rule provides that a defendant being sentenced for multiple convictions arising from multiple counts within a single complaint cannot be sentenced to a total term of imprisonment that is more than double the base sentence for the primary offense. K.S.A. 2019 Supp. 21-6819(b)(4). Specifically, Fitzgerald argues the sentencing statute treats defendants, such as himself, who had multiple cases consolidated pursuant to K.S.A. 22-3203 and K.S.A. 22-3202(1) differently than defendants who are charged with multiple counts in a single charging document.

The State counters Fitzgerald's claim with multiple arguments—first that *Dixon* was wrongly decided because defendants whose cases are consolidated are not similarly situated to offenders who were charged with multiple counts in a single complaint. Second, the State contends that even if *Dixon* was correctly decided, Fitzgerald is not in the same position as the defendant in *Dixon* because Fitzgerald's consolidation was part of a plea agreement and intended only for sentencing purposes because he did not

8

proceed to trial. However, the State cites to no authority distinguishing between the purpose or mechanism of consolidating cases for trial and consolidating cases merely for sentencing.

Whether a statute is constitutional is a question of law subject to this court's unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). This review is not taken as a matter of course and normally this court presumes statutes are constitutional—resolving all doubts in favor of the challenged statute's validity, and interpreting the statute in a manner that will render it constitutional if any reasonable construction will maintain the Legislature's apparent intent. 299 Kan. at 121. However, when a statute implicates "'fundamental interests,'" the general presumption of constitutionality does not apply. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132, 442 P.3d 509 (2019).

As a preliminary matter, defendants generally cannot raise a constitutional argument for the first time on appeal. However, there are well-recognized exceptions to this general prohibition. Here, addressing Fitzgerald's claim "is necessary to serve the ends of justice or to prevent the denial of fundamental rights." *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). His claim also meets the another recognized exception because it "involves only a question of law arising on proven or admitted facts and is finally determinative of the case." *State v. Denney*, 278 Kan. 643, 650-51, 101 P.3d 1257 (2004). This court need only look at the double rule and determine whether it creates the two classes of similarly situated defendants as Fitzgerald claims. And because Fitzgerald has suffered a cognizable injury and there is a causal connection between that injury and the challenged conduct, he has standing to bring his claim. See *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014).

The Equal Protection Clause of the Fourteenth Amendment requires that no State "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, § 1. In other words, the crux of the Equal Protection Clause is that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). However, application of the Fourteenth Amendment is not as straightforward as merely requiring identical treatment or outcomes, "but only that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." 284 Kan. at 372. The court in *Dixon* thoroughly evaluated this issue, and this court finds no reason to differ in its analysis.

When reviewing an equal protection claim, this court engages in a three-step process:

> "First, it considers whether the legislation creates a classification resulting in different treatment of similarly situated individuals. If the statute treats 'arguably indistinguishable' individuals differently, the court determines next the appropriate level of scrutiny to assess the classification by examining its nature or the right at issue. Then, the court applies that level of scrutiny to the statute. [Citations omitted.]" *State v. LaPointe*, 309 Kan. 299, 316, 434 P.3d 850 (2019).

1. *Does the double rule treat arguably indistinguishable persons differently?*

Here, Fitzgerald argues that the double rule distinguishes between two similarly situated defendants:  (1) defendants charged with multiple counts within a single charging document; and (2) defendants charged with multiple counts in multiple charging documents that were consolidated under K.S.A. 22-3203 and K.S.A. 22-3202(1) based on a finding that the charges *could have* been brought in one charging document. Fitzgerald points to the conclusion reached by the *Dixon* panel that the only difference between these two groups is the "case numbers attached to the charges." 60 Kan. App. 2d at 130. The State counters that "not all" defendants whose cases are consolidated are similarly situated to defendants that are charged in a single charging document, and specifically

that Fitzgerald is not similarly situated because the State alleges his cases were consolidated as part of a plea, and only for sentencing purposes, and not for trial as in *Dixon*.

Fitzgerald's argument differs slightly from the defendant's claim in *Dixon*, mainly because although his cases were "consolidated for trial" under K.S.A. 22-3203 and K.S.A. 22-3202(1)—Fitzgerald had already pled guilty pursuant to a plea agreement by the time the district court entered the order for consolidation. Unlike *Dixon*, Fitzgerald's consolidation order was not intended to facilitate a single trial—regardless, the district court found that the charges "could have been joined in a single complaint, information or indictment" and that the charges were "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." K.S.A. 22-3203; K.S.A. 22-3202(1).

Contrary to the State's contention, that differentiating fact that Fitzgerald's consolidated cases were resolved via a plea bargain is immaterial to the equal protection analysis. First, Fitzgerald's cases were consolidated using the same statute and method employed in *Dixon*. Second, Fitzgerald is similarly situated to other defendants who may enter a plea to multiple crimes brought in a single charging document who would then benefit from having the double rule applied to all of the convictions together, while Fitzgerald did not receive that benefit simply because his charges were consolidated via statute. As succinctly explained by the *Dixon* panel, the only real difference between these two classes of defendants is the number of case numbers.

Under these circumstances, this court finds the double rule treats similarly situated classes of defendants differently. Accordingly, this court must proceed to determine the appropriate level of scrutiny to evaluate the classification and determine the constitutionality of K.S.A. 2019 Supp. 21-6819(b)(4) as applied to Fitzgerald.

## 2. *Does the double rule pass rational basis scrutiny?*

Courts can use three differing levels of scrutiny when analyzing an equal protection claim depending on the nature of the legislative classification and the rights affected by that classification: strict scrutiny, intermediate scrutiny, and the rational basis test. *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005). As the court determined in *Dixon*, because K.S.A. 2019 Supp. 21-6819(b)(4) does not burden a fundamental right or involve a suspect class, this court will proceed under the rational basis test. See *Dixon*, 60 Kan. App. 2d at 134-35. "'[U]nder the rational basis test, "a law is constitutional, despite some unequal classification of citizens, if the 'classification bears some reasonable relationship to a valid legislative objective.'"'" *Denney*, 278 Kan. at 651.

While the rational basis test is a "'very lenient standard,' it is not a 'toothless' one." *State v. Cheeks*, 298 Kan. 1, 8, 310 P.3d 346 (2013), *overruled on other grounds by State v. LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019). To survive the rational basis test the statute "'must meet a two-part test: (1) It must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals.'" *Denney*, 278 Kan. at 651. A challenged statute will only fail a rational basis test review if the classification "'rests on grounds wholly irrelevant to the achievement of the State's legitimate objective'" and the statute "'will not be set aside if any state of facts reasonably may be conceived to justify it.'" 278 Kan. at 651-52. Because Fitzgerald is asserting the constitutional challenge, he bears the burden of "negating 'every conceivable [reasonable] basis which might support the differing treatment.'" See *Cheeks*, 298 Kan. at 8.

Both Fitzgerald and the State analyzed *Dixon*, but neither argued whether K.S.A. 2019 Supp. 21-6819(b)(4) passes constitutional muster under a rational basis test review. For his part, Fitzgerald does contend that he was arbitrarily treated differently and subjected to a more severe penalty merely because he was charged under multiple complaints. This court finds no reason to disagree with the conclusion reached by the

12

*Dixon* panel that application of the double rule in cases such as Fitzgerald's results in different sentences based solely on the number of charging documents. This disparity adversely affects defendants like Fitzgerald because the arbitrary application of the double rule in K.S.A. 2019 Supp. 21-6819(b)(4) creates higher total sentences when the defendant's cases are later consolidated as opposed to originating from a single charging document. As in *Dixon*, this court is unable to find that the strict application of K.S.A. 2019 Supp. Supp. 21-6819(b)(4) to Fitzgerald's cases implicates any legitimate sentencing goal. See 60 Kan. App. 2d at 139. Consequently, the statute, as applied to Fitzgerald, does not pass the rational basis test scrutiny.

3. *What is the remedy for this violation?*

Because this court finds that the double rule found in K.S.A. 2019 Supp. 21-6819(b)(4), as applied to Fitzgerald's case, violates his equal protection rights, the final step requires this court to determine the appropriate remedy.

In *Dixon*, the panel noted that

> "[t]here are two remedies when a statute is under-inclusive: (1) either declare the statute void or (2) order that its benefits include the aggrieved class. To decide between the two remedies, the court should look at the importance of the statute and the effects of striking it down. [Citations omitted.]" 60 Kan. App. 2d at 139-40.

Ultimately, the *Dixon* panel concluded that it was "more consistent with the purpose of the [Kansas Sentencing Guidelines Act] to extend the coverage of the statute as opposed to striking it down." 60 Kan. App. 2d at 140. The extension of a statute has previously been applied in other cases. See e.g. *Denney*, 278 Kan. at 660 (extending coverage of statute to aggrieved class finding the remedy better than nullifying the statute); *State v. Kelsey*, 51 Kan. App. 2d 819, 829, 356 P.3d 414 (2015) (expanding coverage of statute to

13

cover narrow class at issue after equal protection clause challenge). While this court is not bound by the *Dixon* panel's decision, there is no rationale to depart from nor disagree with its reasoning. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018).

To summarize, this court borrows from the synopsis distilled by the *Dixon* panel:

"[O]ur decision does not stand for the proposition that the State must always consolidate cases for trial when they are related. Instead, our decision stands for the proposition that when the State chooses to consolidate cases for trial because the charges could have been brought in one charging document, then the State must be held to the sentencing limitations applicable to a trial based on one charging document.

"[W]e find that the remedy for the constitutional violation identified herein is to extend the double rule to cases consolidated for trial based on a finding that the charges could have been brought in one charging document. We do not strike any language from K.S.A. 2020 Supp. 21-6819(b)(4). But for the statute to comply with the Equal Protection Clause of the Fourteenth Amendment, we hold that when two or more cases are consolidated for trial because all the charges could have been brought in one charging document, and the defendant is convicted of multiple charges at trial, the defendant shall receive the benefit of the double rule in K.S.A. 2020 Supp. 21-6819(b)(4) regardless of whether the convictions arise from multiple counts within a single information, complaint, or indictment." 60 Kan. App. 2d at 140-41.

Here, the fact Fitzgerald entered a plea instead of proceeding to trial is immaterial to the outcome of the equal protection analysis. Because the district court found that each of Fitzgerald's cases could have been brought in one charging document and consolidated those cases pursuant to K.S.A. 22-3203 and 22-3202(1), the court's failure to apply the double rule in K.S.A. 2019 Supp. 21-6819(b)(4) to the overall felony sentences violated his rights under the Equal Protection Clause—regardless of the fact that he entered a plea rather than proceeding to trial. Accordingly, this court vacates Fitzgerald's felony sentences in 20 CR 375 and 19 CR 3846 and remands for resentencing for the district

14

court to apply K.S.A. 2019 Supp. 21-6819(b)(4) to his overall felony sentences consistent with this opinion.

The district court's upward sentencing departure is affirmed, but Fitzgerald's felony sentences are vacated, and the case is remanded with directions.