No. 44,321

The State of Kansas, *Appellee*, v. Frank Basker, *Appellant*.

(424 P. 2d 535)

Opinion filed March 4, 1967.

*Eldon L. Hagan*, of Kansas City, argued the cause and was on the brief for the appellant.

*Robert C. Londerholm*, attorney general, *Frank D. Menghini*, county attorney, and *Albert E. Grauberger*, assistant county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: Appellant Frank Basker was convicted by a jury of the offense of attempted robbery in the first degree. His motion for new trial was overruled, he was sentenced under the habitual criminal act by virtue of a previous conviction to a term of not less than ten years nor more than twenty-one years, and he has now appealed.

Appellant's first specification of error involves the character of the representation given him at the trial. It appears that the day before trial the local newspaper contained publicity about the failure of appellant's court-appointed attorney to file income tax returns. This matter was brought to the attenion of the trial judge. He in turn discussed it with appellant and his attorney with the result that the judge appointed as further counsel for appellant an office associate of the lawyer previously appointed. Appellant discussed this matter with both attorneys and made the decision to proceed to trial in this manner with both acting as defense counsel, the last appointed counsel to "try" the case and the former to sit in

and "second chair" the case. The first attorney, who had been appointed several months prior to trial, had discussed the case with his office associate from time to time and in detail the day previous to commencement of trial. The two collaborated in appellant's defense at the trial and, for all we can determine from a somewhat sparse record, they did it zealously and ably. A careful review of that record reveals nothing upon which a charge of inadequate preparation, poor judgment in the handling of the defense, or prejudicial publicity can be sustained.

Appellant contends the information did not charge the offense of attempted robbery in the first degree. This contention appears to be raised for the first time upon appeal, appellant seeking to bring himself within the rule recently announced in *State v. Minor*, 197 Kan. 296, 416 P. 2d 724, that a conviction based upon an information which does not sufficiently charge the offense is void. We have examined the information. Doubtless it could have been drawn with more refinement and in less archaic style, and it may have been subject to being made more definite and specific, but we think it sufficient to charge the offense of which appellant was convicted. As stated, it was never attacked in any way. Appellant was informed by the trial judge at the commencement of the trial that the information charged attempted robbery. He does not appear to have been misled in any way by lack of further particularity in the information and no prejudice is shown.

Appellant complains of insufficiency of evidence. He was convicted of the attempted robbery of one Samuel Haith who was in charge of a pawnshop. Mr. Haith testified that two men entered the pawnship; that one of them first asked for a crowbar and then said: "This is a holdup," and pulled a pistol. He further testified he dropped to the floor and crawled around the counter where he kept a revolver; that he raised up with the gun and the two men immediately turned and fled through the front door of the shop. Mr. Haith postively identified the appellant Frank Basker as one of the two men who attempted to rob him. This testimony alone from the victim of the offense is sufficient to sustain the conviction. Appellant would make much of some inconsistencies appearing in the evidence for the prosecution. Such arguments are, and doubtless were, properly addressed to the jury. Resolved against appellant by the trier of the fact they are unavailing upon appellate review.

Further complaint is made as to testimony about a gun. A police officer investigating the offense obtained a gun at the home of Wilbert McCray, the owner of the "getaway" car used by the would-be robbers. McCray was not charged in connection with the offense. The gun was displayed at the trial and the prosecution attempted to offer it in evidence as an exhibit. No one was able to identify the gun positively so as to connect it with appellant and the trial court did not permit it to be received in evidence. Appellant contends he was prejudiced by reference to the gun.

The rule in such a situation is stated in 23A C. J. S., Criminal Law, § 1087, pp. 114-116, as follows:

"While the prosecuting attorney should not endeavour to introduce legally inadmissible evidence . . . he should be allowed full range within the law to bring out all the material evidence he has good reason to believe will shed light on the commission of an alleged offense, and in the absence of bad faith the displaying of an exhibit not thereafter introduced in evidence, or attempting to introduce improper evidence, does not constitute prejudicial misconduct."

This rule was applied in *State v. Brown,* 193 Kan. 654, 396 P. 2d 401, a case of attempted robbery where, as here, a pistol which could not be identified by eyewitnesses was displayed by an officer at the trial but not received in evidence.

Nothing in the instant record indicates bad faith on the part of the prosecution in its reference to the gun and the efforts to connect it with the appellant; his charge of prejudice therein is not supported by the record.

The last specification of error is based on the giving of an additional instruction to the jury. It appears that the case was submitted to the jury for its determination at 11:00 a. m. on February 3, 1965, the second day of the trial. The jury went to lunch at 12:00 noon and resumed its deliberations at 1:20 p. m. At 3:00 p. m. the same day the jury sent in a note to the trial judge stating it could not reach a decision. The following colloquy then occurred in open court:

"THE COURT: I realize that it is not always possible for twelve people to agree on a verdict. On the other hand, every effort should be made to arrive at a verdict. Trials are expensive. If I discharge this jury without a verdict, a new jury has to be selected and we have to try the man again. The evidence is going to be much the same for the next twelve people to consider. I'm not going to be just downright pigheaded with you folks; if you can't arrive at a verdict, you can't, but I don't really believe that you have tried long enough. I know that time isn't necessarily the criteria by which you

decide whether you can agree or not, but you have been out deliberating this case not to exceed three hours. I'm going to insist that you go back upstairs for a little while, at least. I don't ask anybody to compromise his true convictions. If there are eleven of you for acquittal and one of you for conviction, I don't ask anybody to change because he is in the minority. I don't want anybody to bring in a verdict that he doesn't believe in, but I do think it behooves you as reasonable men and women to examine the thing throughly. Those who are in the minority, or if you are six and six—I don't know how you are and I don't want to know how you are; I haven't any business knowing how you stand. Suppose you are six and six—it behooves those on this hand to listen to the arguments of those on the other hand, in the other group, to see if maybe, upon sincere, objective reflection, the other side is right. Maybe you have missed something and making a mistake. All I can do is urge you to try to arrive at a decision. This I have to do. I have to try to conclude these cases. I try cases every day of the world without juries and I can't have a hung jury. I have to give a decision. Now, you folks don't have to give a decision, I'm not telling you that. I'm not saying to you, 'You go up there and stay there until you bring me a decision.' This wouldn't be right, I'm not even intimating any such thing, but I don't really think that three hours is sufficient to accept your present indication that you cannot possibly arrive at a verdict in this case.

"I am going to insist that you go back up, at least for a little while, and make a further effort, with each of you trying to see the other guy's argument. Maybe he is right and you are wrong. Just make an honest effort to reach a decision. I think I have to do that in my position here. I have to try to get this case concluded. I will say to you once more that I don't want anybody agreeing with the other folks just because he may be in the minority; that isn't the way it's supposed to work. On the other hand, you are not supposed to be pigheaded, either, and if any one of you, openminded and listening to the arguments of the other persons, says that maybe there's something to what they say and that maybe you are wrong, then I urge you to consider seriously whether the other persons may be right. That's as far as I am going to go. I'm not telling you that you have to bring me a verdict; I have never done that and I won't do it now; but I do say to you I think that with what is involved and what is at stake here, I can't conscientiously say, 'O. K., go on home and forget it.' I have to try to get a verdict from you, if you can agree on a verdict. If, sometime later this afternoon, you say again, 'Judge, we just can't arrive at a verdict. You can keep us here all night long and all day tomorrow without food, and we are still not going to bring you in a verdict,' I'm not going to be that way with you. I am, a reasonable person, too, but I have to ask you to try a little further, Mrs. Rice. Are there any questions, without disclosing how you stand—is there anything you would like to say at this time?'

"FOREMAN OF THE JURY: No.

"THE COURT: Is there any among you—let's see a show of hands—Is there any of the twelve of you that thinks that a verdict might be reached?

"A JUROR: Can we still ask for some more information after this?

"THE COURT: Surely.

"A Juror: There is one thing that ought to be cleared up.

"The Court: If you are in dispute as to what somebody said, by all means get that cleared up. If you are in dispute as to what my instructions say—and I know they are in legal language, they have to be—and yet, they may be hard for you to understand. If you don't understand an instruction, let me know what it is that is bothering you. If there is anything I can do to help you short of coming up there and sitting with you, which I'm not permitted to do, I want to do it. I don't want an unjust verdict. I don't want anybody to bring in a verdict that he can't go home tonight and sleep and say, 'I agreed to that verdict and it's right' but I do have to ask you to try a little bit further to arrive at a verdict in this case."

Appellant's counsel objected to the court's remarks as being coercive and moved for a mistrial. These were overruled.

The jury then resumed its deliberation at 3:05 p. m. At 3:45 p. m. it returned to the courtroom and at its request the testimony of Samuel Haith and another witness was read to it. The jury again resumed consideration of the case and at 5:05 p. m. was summoned to the courtroom where the following occurred:

"The Court: One or two of you can still smile, at least, so it could be worse. Madam Foreman, what is the situation, has the jury arrived at a verdict?

"Foreman of the Jury: No.

"The Court: Do you think any progress is being made?

"Foreman of the Jury: No.

"The Court: Do you think it would be futile to call you folks back tomorrow?

"Foreman of the Jury: Well, the way it stands right now, yes.

"The Court: Let's see the hand of anybody who thinks it would be worth-while and that there would be a distinct possibility of getting a verdict if you were to be brought back in tomorrow? I see five or six hands. I'm certainly reluctant to discharge you with four or five or six of you thinking it worthwhile to make another stab at it."

The jury was duly admonished and excused for the day.

At 9:30 a. m. the next day the roll call of the jury was had and the foreman made the following announcement:

"Your Honor, I have been asked by a member of the jury to have our instructions and our oath re-read to us. They seem to think it will help us to come to a conclusion."

The jury oath and, over objection, the formal instructions were reread to the jury. The jury retired at 9:48 a. m. to the jury room and at 11:05 a. m. reached a verdict of guilty.

The question before us is whether the giving of the additional instruction embodied in the court's initial remarks constituted coercion on the jury.

This serious and difficult question is not novel (see annotation at 100 A. L. R. 2d 177, discussing some of our own cases). We dealt with it recently in much the same form in *State v. Oswald,* 197 Kan. 251, 417 P. 2d 261. There, under the particular circumstances, the giving of an additional instruction commonly known as the Allen charge (see *Allen v. United States,* 164 U. S. 492, 41 L. ed. 528, 17 S. Ct. 154) was held not to constitute prejudicial error. Admonition as to use of such a belated instruction was pointedly expressed.

It is the duty of a judge to guide the jury in its decision-making process by giving proper instructions. But he must never abuse this office by coercing the jury into making decisions it might not otherwise make. He must never do anything to violate the right of free men to disagree without being penalized therefor.

In the case at bar the jurors had deliberated less than three hours when they announced their inability to reach a decision. The trial judge was well within his discretion in requiring them to deliberate a longer period of time before excusing them and declaring a mistrial. But we think he used improper language in doing so. His remarks went beyond those used in *Oswald* and we cannot put our approval on them.

Such disapproval, however, is not tantamount to declaring reversible error. In *State v. Neff,* 169 Kan. 116, 218 P. 2d 248, cert. den. 340 U. S. 866, 95 L. ed. 632, 71 S. Ct. 90, this court held that in determining whether the giving of such an instruction constituted reversible error, the instruction, the circumstances existing at the time it was given, and its probable effect in the light of the entire record are to be considered.

Immediately following every objectionable feature in it, as already set forth, the instruction emphasized, in one way or another, that no juror should compromise or surrender his convictions. At the time it was given the judge did not know the numerical division or the view of the majority. One juror responded, asking if the jury could seek more information. After some deliberation it did request that the testimony of two witnesses be read to it. The jury then pondered the matter further. At the time it was excused for the night five or six indicated by a show of hands they thought there might be a possibility of arriving at a verdict with more time. The next morning after further consideration and the rereading of the instructions and jury oath the jury reached a verdict.

Manifestly the judge's remarks had no immediate coercive effect; there was no prompt return of a verdict and none was reached the day the remarks were made. Final agreement was reached only after further substantial deliberation, after the jurors had had reread to them highly pertinent evidence, as well as the instructions and oath, and after being excused overnight from the trial. Overall, twenty hours elapsed from the time of the supplemental instruction to the verdict. These circumstances negative the thought that anyone was coerced or stampeded into changing his viewpoint. Viewing the instruction in perspective we are convinced that the whole record indicates it was not coercive so as to constitute reversible error and we so hold.

The judgment and sentence are affirmed.

APPROVED BY THE COURT.

FATZER, J., dissenting: I must respectfully dissent from holding (5) in the syllabus and the corresponding portion of the court's opinion. The court has concluded that under the facts disclosed by the record, the district judge's belated instruction and subsequent events did not coerce the jury so as to constitute reversible error. I do not agree.

We condemn lawyers for making statements to a jury not within the issues of the case. We should be much more careful with respect to similar statements made by a district judge. In the instant case, the judge referred to the expense of trials, particularly in connection with a retrial of the appellant if agreement was not reached. That had nothing to do with the question of the appellant's guilt or innocence as disclosed by the evidence.

I have previously stated my disapproval of an *Allen* or "dynamite" instruction in my dissent in *State v. Oswald,* 197 Kan. 251, 263, 417 P. 2d 261. The trend of courts everywhere appears to disapprove such an instruction, and I think rightly so. The annotator at 100 A. L. R. 2d 177, 181, makes the following comment:

"While it might be problematical to attempt to discern any definite trend in the courts' views of the propriety of instructions urging dissenting jurors to give due consideration to the majority's opinion, it may be noted that such instructions have been disapproved, or at least criticized, in several recent decisions, both in the federal and in the state courts."

See, in addition to cases cited in the annotation, *Burroughs v. United States,* 365 F. 2d 431 (10 Cir. 1966).

In the case at bar, the remarks of the district judge equated his own position as a trier of the facts with that of the jury. This analogy was obviously improper and clearly unwarranted in view of the constitutional entitlement of an accused to a unanimous verdict by a jury of twelve of his peers before conviction. Likewise, the use of the term "pigheaded" by the district judge in addressing the jury was highly improper. No juror should be subjected to censure or ridicule for adhering to his honest convictions. Moreover, veiled reference to keeping the jury a long period of time was made. A jury should be left free to act without any real or seeming coercion on the part of the district court.

The district judge's remarks went substantially beyond those in *Oswald.* In my judgment they were of such objectional nature it is impossible to escape the conclusion the result was coercive. I would reverse the judgment and grant a new trial.