(947 P.2d 461)
No. 75,869

STATE OF KANSAS, *Appellee*, v. DONNIE R. LOCKHART, JR., *Appellant*.

Opinion filed November 7, 1997.

*Hazel Haupt*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*James A. Brown* and *Tony W. Rues*, assistant district attorneys, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., STEPHEN D. HILL, District Judge, assigned, and PAUL E. MILLER, District Judge, assigned.

HILL, J.: Donnie Ray Lockhart appeals his convictions for one count of possession of cocaine with intent to sell, contrary to K.S.A. 1993 Supp. 65-4127a; one count of possession of drugs without a

drug tax stamp, contrary to K.S.A. 1993 Supp. 79-5204; one count of obstruction of official duty, contrary to K.S.A. 1993 Supp. 21-3808(b); one count of driving while not having his headlamps on, in violation of K.S.A. 8-1703; and one count of failing to give a turn signal, in violation of K.S.A. 8-1548. Lockhart was convicted of all counts and was sentenced to a controlling sentence of 34 months in prison. He makes this timely appeal.

The facts of the case should be noted. Two Topeka police officers noticed a car driving the wrong way on a one-way street, at night, without its headlamps on. The car stopped at a residence, and the driver left the vehicle, entered the residence for a few minutes, returned to the vehicle, and continued to drive the wrong way up the one-way street. The officers pursued the vehicle, activating their emergency lights, two take-down lights, and a spotlight. The vehicle failed to stop but continued at a slow pace as it turned the corner onto a more heavily traveled street.

The spotlight illuminated the interior of the vehicle, which allowed the officers to observe that there were two individuals in the car. The driver was later identified as Donnie Ray Lockhart. The police officers activated their siren and followed the car. The vehicle swerved slightly to the right, and the officers saw Lockhart look and reach down toward the center portion of the seat and raise his hand to his mouth. After that, the officers observed the passenger reach through the open window and pour out a liquid from a bottle wrapped in a paper bag. The officers anticipated that Lockhart was going to leave the moving car when the speed of the car suddenly slowed and the driver's door opened. Lockhart exited the vehicle and began to run. The police officers stopped their police car, and one officer pursued Lockhart on foot onto the grounds of the Kansas Law Center in Topeka. The other officer pursued the passenger. In the lights surrounding the Kansas Law Center, the officer saw Lockhart reach toward his mouth and then fling an object toward the bushes. The officer did not stop his pursuit but made a mental note of the site so he could return to look for any evidence.

Lockhart continued to run around the corner of the building, and the officer eventually found him crouching between the build-

ing and a fence. The police officer drew his weapon and ordered Lockhart to lie on the ground. Lockhart called the officer by name and stated to him, "[T]he only reason why I ran is because I have warrants." Lockhart was placed under arrest, and the officer escorted him to the Law Center parking lot while he waited for his partner to return after unsuccessfully attempting to apprehend the passenger.

The police officer secured Lockhart in the back seat of the patrol car and returned to the areas of the bushes where he had seen Lockhart throw something. The officers eventually found on top of the bushes a ripped, wet, plastic bag containing what they suspected to be six plastic-wrapped rocks of cocaine, along with three individual plastic-wrapped rocks that appeared to have spilled from the ripped bag. The officer believed from the appearance of the bag and his observation of Lockhart's hand-to-mouth movements that Lockhart had carried the bag between his teeth as he fled.

Due to the wet condition of the bag, the officers did not remove the suspected cocaine from the plastic bags. They weighed it at the police department, and it weighed 2.4 grams, along with the plastic bags. The cocaine was later weighed at the Kansas Bureau of Investigation Crime Lab, where it weighed 0.96 grams. According to the KBI report, each of the nine rocks of cocaine weighed just over or just under 0.1 grams. A warrant check revealed that Lockhart had no outstanding warrants at the time of his arrest.

A reading of the transcript of the trial reveals that the trial was hard fought and contentious. During his initial closing comments, the prosecutor referred to the defendant as a liar and drug dealer. He advised the jury that Lockhart had had 1 year and 2 months to think about the defense he was going to raise and what lies he could perpetrate. He commented in his argument that the defense counsel had attempted to penetrate the facts with "fog, smoke, or mirrors." He asked the jury to put itself in the place of a drug dealer to determine the credibility of Lockhart's statements. All of these comments were made without objection.

The transcript of the prosecutor's concluding remarks also reveals the following:

"MR. RUES: I'll tell you what a rare moment is, ladies and gentlemen, defense counsel wants you to think that an officer lied. You think that's a rare moment. I'll tell you what isn't a rare moment, for defense counsel to lie for the defendant up here. To start—

"MR. ROSEL: Judge, I will object. I will object—

"THE COURT: Sustained.

"MR. ROSEL: And ask that that be stricken, and I would move for a mistrial based upon counsel's implication that defense counsel has lied before this jury. Move for a mistrial immediately.

"MR. RUES: That was not the implication—

"MR. ROSEL: Move for a mistrial.

"THE COURT: No, I'll sustain the objection and take the motion under advisement—

"MR. ROSEL: And ask that that be stricken and that that not be considered—

"THE COURT: I'm sorry, you don't need to interrupt. I was making my ruling. I will strike it, but I will take the motion under consideration. You may continue, Mr. Rues.

"MR. ROSEL: Judge, I would ask that you admonish Mr. Rues to not make comments about what he believes defense counsel has done or what the truth of defense counsel's comments are.

"THE COURT: Mr. Rues, you may continue.

"MR. RUES: Thank you, Your Honor. The defendant has lied. He said he's not any drug dealer. Defense counsel got up here and told you what the defendant did. Well, he lied, ladies and gentlemen. The defendant lied. He's a drug dealer. That's not a rarity. That's what took place."

Lockhart raises six issues on appeal. We deal with his first and third issues. He first contends that he was denied a fair trial because the prosecutor suggested that defense counsel lied on behalf of his client. In his third issue, he argues that there was insufficient evidence, as a matter of law, to sustain the conviction for possession of cocaine without a tax stamp.

## CLOSING ARGUMENT

An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Before an appellate court can declare the error harmless, it must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial. *State v. White,* 246 Kan. 28, 37, 785 P.2d 950, *aff'd as modified* 246 Kan. 393, 789 P.2d 1175 (1990).

" 'When determining whether prosecutorial misconduct was prejudicial, factors that should be considered include: (1) Is the misconduct so gross and flagrant as to deny the accused a fair trial? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors? [Citation omitted.]' " *State v. Marble,* 21 Kan. App. 2d 509, 515, 901 P.2d 521, *rev. denied* 258 Kan. 861 (1995) (citing *State v. Perrigo,* 10 Kan. App. 2d 651, 654, 708 P.2d 987 [1985]).

We view the prosecutor's comments referring to the defendant and the defense counsel as liars to be serious breaches of the standard of fair comment permitted to lawyers when making closing arguments. We believe that the prosecutor's gross and flagrant comments in this case rise to the level of a constitutional error. Trials cannot be allowed to degenerate into name-calling contests. Juries must be given an opportunity to exercise reason and sound judgment in deciding the facts of a case, free from passion and prejudice.

Furthermore, we believe a fair reading of the transcript reveals nothing but ill will on the part of the prosecutor. Even after the court sustained the defense counsel's objection, the prosecutor again called the defendant and the defense counsel liars when he said: "The defendant has lied. He said he's not any drug dealer. Defense counsel got up here and told you what the defendant did. Well, he lied, ladies and gentlemen. The defendant lied. He's a drug dealer." These statements can only be deemed an appeal to passion and prejudice.

We are not convinced that the statements made by the prosecutor would have little weight in the minds of the jury in trying to decide whether Lockhart was guilty of possession of cocaine with the intent to sell the same. Lockhart denied possessing the cocaine as well as having any intent to sell any cocaine. The jury had to weigh the testimony of the police officer's observations of Lockhart's hand-to-mouth movements and his flinging of the baggie into the bushes during the foot pursuit against Lockhart's denials and his statement that he was running because he thought there were some outstanding arrest warrants for him. Lockhart's credibility was an issue in this trial. The prosecutor's statements would likely

have great weight in the minds of the jury in this case. We cannot conclude beyond a reasonable doubt that the prosecutor's comments, calling the defendant and his counsel liars, had no effect upon the jury's verdict.

It is the duty of the prosecutor in a criminal matter to see that the State's case is properly presented with earnestness and vigor, and to use every legitimate means to bring about a just conviction, but the prosecutor should always bear in mind that he or she is an officer of the court and, as such, occupies a quasi-judicial position whose sanctions and traditions he or she should preserve. *State v. Wilson*, 188 Kan. 67, 73, 360 P.2d 1092 (1961).

A prosecutor is under a duty to ensure that only competent evidence is submitted to the jury. Above all, the prosecutor must guard against anything that could prejudice the minds of the jurors and hinder them from considering only the evidence adduced. *State v. Ruff*, 252 Kan. 625, 636, 847 P.2d 1258 (1993). When a prosecutor's statement transcends the limits of fair discussion of the evidence and the trial judge fails to instruct the jury to disregard the remark after the defense counsel objects, a new trial is required to assure the constitutional right to a fair trial. 252 Kan. at 636. In this case, the trial court simply sustained the objection and agreed to "strike" the comments but did not explain what that meant. The trial court neither instructed the jury to disregard the flagrant comments made by the prosecutor, nor reiterated to the jury that the statements of counsel were not evidence.

We conclude that Lockhart did not receive a fair trial because of the improper remarks of the prosecutor in his closing argument. We reverse and remand for a new trial.

## DRUG TAX STAMP

Turning to Lockhart's third point on appeal, we must determine, as a matter of law, whether there was sufficient evidence to sustain his conviction for possession of cocaine without a tax stamp.

When the sufficiency of the evidence is challenged, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant

guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

K.S.A. 1993 Supp. 79-5204(c) provides that drug dealers must pay drug taxes and affix tax stamps on their drugs. A "drug dealer" is defined as

"any person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana, *or more than one gram* of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight." (Emphasis added.) K.S.A. 1993 Supp. 79-5201.

K.S.A. 1993 Supp. 79-5202(b) provides:

"For the purpose of calculating the tax hereunder, . . . [the] controlled substance is measured by the weight of the substance in the dealer's possession. The weight of the . . . controlled substance includes all material, mixture or preparation that is added to the . . . controlled substance.

In this case, the jury was instructed that it could find Lockhart guilty of a drug tax stamp violation if it found that he possessed "more than one gram" of cocaine without an affixed Kansas drug tax stamp or other label showing the tax had been paid. The only competent evidence produced from the trial was from the KBI laboratory, which indicated that Lockhart had in his possession 0.96 grams of cocaine. As a matter of law, we find that the weight of the cocaine is not sufficient to sustain his conviction for not having a drug tax stamp affixed thereon. In order to sustain a conviction for possessing a controlled substance that is sold by weight, without a tax stamp, the accused must have more than 1 gram of a controlled substance in his or her possession. See K.S.A. 1993 Supp. 79-5201(c).

In light of our rulings, we need not address the other issues raised by Lockhart in his appeal.

Reversed and remanded with instructions.