(10 P.3d 780)
No. 82,596

STATE OF KANSAS, *Appellee,* v. CHARLES D. PHAM, *Appellant.*

—

Opinion filed September 1, 2000.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., BEIER, J., and J. STEPHEN NYSWONGER, District Judge, assigned.

BEIER, J.:   Charles D. Pham originally raised seven issues in this direct appeal from his conviction for aggravated assault We reverse and remand for a new trial.

We need to address only five of Pham's issues to give the district court adequate guidance on remand. Those five ask: (1) Did the district court err in allowing testimony on gang membership to be introduced at trial? (2) Did the district court err in allowing the prosecution to question witnesses about the gun seized at the time of arrest? (3) Did the prosecutor engage in misconduct during closing argument? (4) Did the district court's cumulative errors deny Pham a fair trial? (5) Did the district court err in refusing to allow Pham to file a late notice of alibi defense?

According to the State, Pham pointed a gun at the head of Dung Nguyen during an altercation in a Wichita park. Pham and two others—who were also known by their gang or street names as "Charlie," "Khan," and "Lip"—then left the park in a black Acura. The victim reported the incident to Wichita Police Officer Richard Wymer, Jr., of the Gang Intelligence Unit and identified photographs of Pham and a second individual. Approximately two weeks later, Wymer stopped Pham in a black Acura and arrested him. At the time, he also seized a gun from the automobile. Pham was charged with aggravated assault.

Prior to trial, defense counsel filed a motion to exclude any evidence that a gun was seized from the Acura at the time of Pham's arrest. Defense counsel argued that the gun could not be identified as the gun used in the alleged assault. The prosecutor responded in part by saying that witnesses had said the gun used in the assault was "big" and that the gun seized was large, implying it would, in fact, be linked to the crime. The district court ruled that the gun would be admissible at trial if a proper foundation was laid. At trial, the prosecutor displayed the gun seized and labored mightily to link it to the crime. She repeatedly failed, and the district court rejected her offer to admit the gun into evidence. After the jury returned its guilty verdict, Pham moved for new trial based on the prosecutor's use of the unrelated seized gun. The district court denied the motion without elaboration.

Pham also moved prior to trial to exclude any evidence of gang membership. The district court denied the motion. At trial, Officer Wymer testified in the following manner about his police department work assignment:

"Q. Are you assigned to any particular division of the police department?
"A. Yes, the gang intelligence unit.
"Q. And how long have you been with the gang intelligence unit?
"A. About a year and a half.
"Q. And do you specialize in any particular area of the gang intelligence unit?
"A. Yes. I've been working in the Asian community and with Asian gangs for about two and half, three years."

Defense counsel again objected to "any testimony about gangs," and the objection was overruled.

Wymer's later testimony returned to the gang theme, when he explained how the victim had gotten in touch with him and conveyed information about the alleged assault and perpetrators.

"Q. How did he get ahold of you?
"A. He paged me. A lot of people have my pager number.
"Q. And Dung had your pager number?
"A. Yes, he did.
"Q. He paged you at home. What did he tell you?
"A. When I called him back, he said that his brother Long had been stabbed. He said that he and some of his family members were in Plainview Park

playing basketball when some guys came up, Charlie, Khan and Lip, and he said Charlie had pointed a gun at him and that they had stabbed Long.

"Q. Did he know the names of these people that he was telling you about?

"A. He knew them but didn't know them by their full, complete names. I mean, he knew Charlie as a first name and an individual that goes by the name of Lip and a guy that goes by the name of Khan.

"Q. Now, did you know who he was talking about when he used the names Charlie, Lip and Khan?

"A. Yes.

"Q. And how did you become aware of those names?

"A. I've known these individuals for quite a long time.

"Q. In your capacity as an officer —

"A. Yes.

"Q. — assigned to gang intelligence or, excuse me, to the Asian community?

"[DEFENSE COUNSEL]: Your Honor, I'm going to object to the question for relevance and also for the prior motion.

"[DEFENSE COUNSEL]: Same objection.

"THE COURT: I'll overrule on those grounds.

"BY [PROSECUTOR]:

"Q. How did you know them?

"A. Basically through contacts throughout the years talking to —

"[DEFENSE COUNSEL]: Your Honor, I'm going to object to hearsay.

"THE COURT: Overruled.

"THE WITNESS: And, I mean, part of what we do is gather information on known gang members and put it into the computer for purposes like this where they come in.

"BY [PROSECUTOR]:

"Q. Do you keep track of the street names of the people that you're identifying?

"A. Yes, we do."

During the defense case, Pham's lawyer, Kevin Loeffler, was the only witness to testify on behalf of his client. (We assume Loeffler's employment of this unconventional procedure must have previously passed muster with the district court under Rule 3.7(a) of the Kansas Rules of Professional Conduct [1999 Kan. Ct. R. Annot. 375].) Loeffler testified that the alleged victim came into his office prior to trial and said he had not seen Pham on the day of the crime. Loeffler also stated that he had not called the district attorney or police to report the victim's change in story because "way back when, when I was a young defense attorney, I once did call the prosecutor and tell them about that, and then the witness

changed his story again right afterwards. So, no, my job is not to inform the prosecution. My job is simply to defend my clients."

Loeffler's testimony drew fire during the prosecutor's closing argument, when she said: "They tell you that this is a court of law. It's important to know the truth, but they don't want to know the truth. Mr. Loeffler under oath told you he doesn't want the truth. He wants — His job is to defend his client. They don't care about the truth." Defense counsel's objection to this argument based on misstatement of evidence was overruled. The prosecutor also made other disparaging remarks about defense counsel's and another witness' credibility and told the jury she could have brought additional witnesses to testify against the defendant.

### Evidence of Gang Membership

Pham first takes issue with the district court's admission of evidence linking him to Asian street gangs. Our standard of review on the admission of such evidence is abuse of discretion; judicial discretion is abused when the judicial action is arbitrary, fanciful, or unreasonable or when no reasonable person would take the view adopted by the district court. *State v. Roaden*, 26 Kan. App. 2d 441, 445, 988 P.2d 745, *rev. denied* 268 Kan. 894 (1999).

Gang evidence may be admissible to demonstrate witness bias, *i.e.*, that fellow members of gangs could lie to protect one another. 26 Kan. App. 2d at 445. It also may be admissible "to show a motive for an otherwise inexplicable act." If the evidence is to be used to support motive, however, the prosecution must first demonstrate that gang membership or activity is related to the crime charged. See *State v. Sims*, 265 Kan. 166, Syl. ¶ 5, 960 P.2d 1271 (1998); see also *State v. Jamison*, 269 Kan. 564, 568, 7 P.3d 1204 (2000) (evidence of gang involvement not admissible under K.S.A. 60-455; admissible if relevant to motive, identity).

The district court permitted the prosecution to introduce two types of gang evidence in this case, both through the testimony of Officer Wymer. The first consisted of Wymer's explanation of his duties in the police department's gang unit. The second consisted of his recitation regarding Pham's gang nickname as well as those of his companions.

The propriety of a sheriff's deputy's testimony about his assignment to a "unit that focuses on drugs and gang activity" was discussed in *State v. Bowen,* 254 Kan. 618, 622-23, 867 P.2d 1024 (1994). In that case, the trial court had ruled the testimony did not violate a previous order in limine because it did not link the defendant or the defendant's alleged crime to a gang. 254 Kan. at 624. The Supreme Court held that the trial judge did not abuse his discretion and said that, even if he had, there was no substantial prejudice requiring mistrial. 254 Kan. at 624.

If this case, like *Bowen,* involved only evidence of Wymer's work assignment to the gang unit, we would have no trouble reaching the conclusions that the trial court did not abuse its discretion or that any abuse was harmless. In our view, however, Wymer's additional testimony about Pham's and his companions' gang names makes this case distinct.

As Pham's appellate counsel points out, there was no predicate proof that this crime was in any way gang-related, much less that Pham's gang membership or activity supplied a motive for an otherwise inexplicable act. See *Sims,* 265 Kan. at 174. The prosecution also has not attempted to argue that evidence of Pham's gang membership or activity would demonstrate the potential for witness bias. See *Roaden,* 26 Kan. App. 2d at 445. In these circumstances, the evidence of gang names had zero probative value.

On the flip side of the analysis of evidence admission, it is obvious that Wymer's testimony made it possible for the jury to draw an inference that Pham was a member of an Asian street gang. Although proof of a criminal defendant's membership in a street gang can always be described as prejudicial, it becomes grossly and unfairly so when it is not balanced by probative value of some significant magnitude.

There was no balance here. We therefore conclude that the district court abused its discretion in admitting Wymer's testimony regarding gang names.

### Questioning Regarding Unrelated Gun Seized at Arrest

Pham's second allegation of error asserts that the prosecutor engaged in misconduct by questioning witnesses about the gun

seized at the time of Pham's arrest because she knew or should have known that the gun was unrelated to the crime for which Pham was on trial. Pham contends the questions were asked without any good faith basis, and the prejudicial effect of the questioning required the trial court to grant a motion for a new trial.

Our standard of review on denial of a motion for new trial is abuse of discretion. See *State v. Franklin*, 264 Kan. 496, 498, 958 P.2d 611 (1998). In deciding the preliminary question of whether there was prejudicial prosecutorial misconduct justifying a new trial, we are also guided by the Supreme Court's decisions in *State v. Basker*, 198 Kan. 242, 424 P.2d 535 (1967), and *State v. Brown*, 193 Kan. 654, 396 P.2d 401 (1964).

In *Basker*, a police officer obtained a gun from the home of the owner of a "getaway" car used by would-be robbers. The gun was displayed at the trial of one of the would-be robbers, and the prosecution offered it into evidence. No one was able to connect the gun with the defendant, and the trial court did not admit it. The Kansas Supreme Court affirmed, holding that, absent bad faith, the display of evidence ultimately offered is not prejudicial error. 198 Kan. at 244.

The holding in *Brown* is similar. In that case, the prosecutor questioned two witnesses about a gun found on the person of the robbery defendant at the time of his arrest. When neither of two eyewitnesses to the robbery could identify the gun as the one used in the robbery, the prosecutor made no further attempts to link the gun to the crime and never offered it into evidence. On appeal, the Supreme Court affirmed, noting that there was nothing in the record to support the contentions that the gun was waived in front of the jury or that the prosecutor was acting in bad faith. Thus, there was no prejudicial misconduct. 193 Kan. at 656.

Unlike *Basker* and *Brown*, the record in this case contains evidence of bad faith on the part of the State. At the hearing on the motion to exclude evidence of the gun, the State implicitly misled the court by intimating that the seized gun was consistent with descriptions given by witnesses of the gun used in the crime. Likewise, at the trial, the prosecutor continued to employ smoke and mirrors in an effort to lead the jury to an inference with no basis

in fact. She repeatedly tried to have witnesses testify that the gun seized was the same gun used in the assault. Despite failing repeatedly, she offered the gun into evidence as though it had legitimate probative value. When the district court voiced some doubt about the purpose admission would serve, the prosecutor finally was forced to confess that the conclusion she had so wished the jury to draw—that the seized gun and the gun used in the crime were one and the same—was a fiction. Still, she persisted, saying:

"Your honor, the purpose is to show that the witnesses described a gun. They were specific about the description of the gun. There was a gun found. *They have indicated that it is not the same gun*, but that gun was, in fact, found in the defendant Charlie Pham's car." (Emphasis added.)

This prosecutor appears to have forgotten that she holds a position unique in the bar. Although she is required to be a zealous advocate on behalf the government, she must not pursue conviction at all costs. Her role is to see that justice is done. "[T]he prosecutor should always bear in mind that he or she is an officer of the court and, as such, occupies a quasi-judicial position whose sanctions and traditions he or she should preserve." See *State v. Lockhart*, 24 Kan. App. 2d 488, 493, 947 P.2d 461, *rev. denied* 263 Kan. 889 (1997) (citing *State v. Wilson*, 188 Kan. 67, 73, 360 P.2d 1092 [1961]).

We are convinced that the prosecutor's use of the gun at Pham's trial represented prejudicial misconduct geared to achieve her desired ends with little attention to the fairness of the means. We therefore find that the district court abused its discretion in refusing to grant a new trial to Pham on this issue.

### Prosecutorial Misconduct in Closing Argument

Pham also asserts that the prosecutor engaged in misconduct during her closing argument by making accusatory remarks about opposing counsel.

The analysis of the effect of a prosecutor's alleged improper remarks in closing argument is a two-step process. First, we must decide whether the remarks were outside the considerable latitude a prosecutor is allowed in discussing the evidence. In criminal trials, the prosecution is allowed wide discretion in language and in

presentation of closing argument, as long as the argument is consistent with the evidence. Second, we must decide whether the remarks constitute plain error; that is, whether they are so gross and flagrant as to prejudice the jury against the accused and deny a fair trial, requiring reversal. *State v. Pabst*, 268 Kan. 501, 505, 996 P.2d 321 (2000); *State v. Lumley*, 266 Kan. 939, 959, 976 P.2d 486 (1999). Ill will on the prosecutor's part and the quality and quantity of the evidence against the defendant are factors to be considered in assessing prejudice. *Pabst*, 268 Kan. at 508 (citing *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 [1976]).

In this case, we find the prosecutor's statements that defense counsel Loeffler did not "want the truth" and that he told the jury under oath that he did not "care about the truth" misstated the evidence and, in essence, called him a liar. This impression was furthered by her accompanying remark: "Boy, if you're going to be looking at the credibility of the witnesses, you might also start with some of these lawyers." See *Pabst*, 268 Kan. at 505-07 (prosecutor's assertion that defendant lied improper); *Lockhart*, 24 Kan. App. 2d at 491-93 (prosecutor's comments referring to defendant and defense counsel as liars "serious breaches of the standard of fair comment permitted to lawyers when making closing arguments"; "[t]rials cannot be allowed to degenerate into name-calling contests"); see also *State v. Gray*, 25 Kan. App. 2d 83, 84-88, 958 P.2d 37 (1998) (prosecutor's comments during cross-examination and closing argument manifesting ill will and calling attention to matters outside the evidence merit reversal).

An evaluation of the comments made by the prosecutor is complicated because of defense counsel's dual role as advocate and witness. However, we believe these comments reflect an ill will toward the defendant and opposing counsel that is destructive to the professionalism on which the bar prides itself. They also constituted gross and flagrant misconduct that denied the defendant a fair trial. In the words of the *Lockhart* panel: "Juries must be given an opportunity to exercise reason and sound judgment in deciding the facts of a case, free from passion and prejudice." 24 Kan. App. 2d at 492. Especially when the district judge fails to rein in bad behavior by the prosecutor, juries are encouraged to throw

over rational analysis for emotion, and the defendant's right to due process of law is violated. We believe the prosecutor crossed the line here.

Our conclusion in this regard is reinforced by additional improper comments made by the prosecutor during closing argument. At one point, despite an absence of any evidence of police investigation results to support her, the prosecutor suggested to the jury that she had many additional witnesses who would tie Pham to the crime; she told the jury she simply chose not to call them to avoid wasting time. She also expressed her opinion that a witness other than Loeffler was "not credible." Although these comments passed without objection, we note them as further indicators of ill will and the triumph of zeal over responsibility throughout the trial. See *Pabst*, 268 Kan. at 510 (statements regarding witness credibility demonstrate prosecutor ignored obligation to avoid personal insinuations).

### Cumulative Error

Even if each of the three errors discussed above did not merit reversal on its own, collectively they would qualify this case for application of the cumulative error rule.

"[C]umulative trial errors, when considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant." *State v. Allison*, 259 Kan. 25, 37-38, 910 P.2d 817 (1996) (citing *State v. Lumbrera*, 252 Kan. 54, Syl. ¶ 1, 845 P.2d 609 [1992]).

Accord *State v. Alderson*, 260 Kan. 445, 469, 922 P.2d 435 (1996).

We agree with Pham's counsel that the evidence in this case was far from overwhelming. Moreover, the cumulative effect of the errors discussed above was substantially prejudicial and denied Pham a fair trial.

### Late Notice of Alibi Defense

The standard of review governing our consideration of the district court's exclusion of alibi testimony for noncompliance with

the notice requirement in K.S.A. 22-3218 is abuse of discretion. *State v. Claiborne*, 262 Kan. 416, 423, 940 P.2d 27 (1997).

Pham did not seek to present an alibi defense until the last work day before his trial. The statute requires notice of the defense to be given at least 7 days before trial. K.S.A. 22-3218(2). The requirement seeks to protect the State from eleventh-hour defenses that can be easily fabricated. 262 Kan. at 423. A district court may permit notice at a later date for good cause shown. K.S.A. 22-3218(2).

Pham failed to demonstrate good cause for his delay in this case. His excuse was that he had not known the names of his alibi witnesses, although he admitted to knowing their addresses. We see no abuse of discretion in the district court's conclusion that knowledge of the witnesses' addresses could have translated into knowledge of the witnesses' names at a much earlier point.

Reversed and remanded for a new trial.