(109 P.3d 1272)
No. 91,710

CITY OF DODGE CITY, *Appellee,* v. EDDIE INGRAM, *Appellant.*

Opinion filed April 15, 2005.

*Leslie A. Hess* and *Laura H. Lewis*, of Dodge City, for appellant.

*Terry J. Malone*, city attorney, for appellee.

Before GREENE, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Eddie Ingram appeals from his jury trial conviction of driving under the influence of alcohol, his second offense, in violation of Section 30 of the Dodge City ordinance. This ordinance follows the wording of K.S.A. 2002 Supp. 8-1567. Ingram raises four arguments on appeal. First, Ingram argues that the officer's comments during the trial referring to the preliminary breath test violated the trial court's order on his motion in limine and required a mistrial. We find no abuse of discretion in the trial court's ruling. The officer's comment did not refer to the preliminary breath test or its results and, therefore, did not appear to violate the order in limine. Next, Ingram contends that his breath test results were improperly admitted into evidence as the foundational requirements for the Intoxilyzer breath testing machine were not met. The trial transcript in this case indicates that the certification for both the Intoxilyzer machine and the administering officer were admitted into evidence. Moreover, at oral arguments, Ingram conceded that these certification documents had been admitted at trial. Therefore, Ingram's argument on this issue lacks merit.

Next, Ingram asserts that the trial court erroneously refused to give his requested jury instruction concerning K.S.A. 8-1002(b). We determine that such an instruction was not warranted under the facts of this case. Finally, Ingram argues that reversible error was committed when the prosecutor submitted improper argument to the jury. The City concedes that two comments made by

the prosecutor during closing arguments were improper. We determine that these comments substantially affected Ingram's right to a fair trial. Accordingly, we reverse and remand for a new trial.

During the early morning hours of November 7, 2002, Officer Michael Coil stopped Ingram after he noticed Ingram's truck change lanes very slowly, drift back into the other lane a couple of times, and nearly hit the curb. Upon stopping Ingram, Coil smelled a strong odor of alcohol and noticed that Ingram's eyes were red and watery and that his speech was slurred. When Coil asked Ingram if he had been drinking, Ingram responded that he had "had approximately two beers a little while previous."

Coil administered several field sobriety tests including an alphabet test, a walk-and-turn test, and a one-leg balance test. In Coil's opinion, Ingram failed the tests. Coil indicated that on the alphabet test, Ingram initially skipped several letters. After Coil asked him to repeat the test, Ingram then slurred some of the letters together. On the walk-and-turn test, Ingram started the test before Coil could finish demonstrating it, had to raise his hands to maintain his balance, and did not properly turn. On the one-leg balance test, Ingram lost his balance, almost fell, and then returned his foot to the ground. After the tests, Coil again asked Ingram how many beers he had consumed. This time, Ingram responded that he had 6, 8, or 10 beers. Ingram admitted to Coil that he had failed the field sobriety tests. Ingram further admitted that he was too intoxicated to drive. Ingram asked if Coil or another officer would give him a ride to the hotel where he was staying.

Coil arrested Ingram and took him to the police station where Coil administered a breath test. According to the times given by Coil, the breath test was given less than an hour after Ingram had been stopped. The results showed that Ingram had a breath alcohol concentration of .216, over two times the legal limit.

Ingram was convicted in municipal court of driving under the influence of alcohol. Ingram then appealed his conviction to the district court of Ford County. Coil was the only witness to testify at trial. During Coil's testimony, the prosecutor introduced a videotape of the stop that had been taken from Coil's car-cam. Although the times on the videotape did not coincide with those

given by Coil, Coil testified that the times on the videotape were incorrect. Coil stated that the time on the car-cams had to be changed through the manufacturer. Coil indicated that he had obtained the proper times from dispatch reports.

The jury found Ingram guilty of driving under the influence of alcohol in violation of Section 30 of the Dodge City ordinance. He was sentenced to 120 days in jail with all but 5 of those days suspended pending successful completion of recommended treatment. Ingram was placed on supervised probation for 1 year and fined $1,000 plus costs and fees.

*Motion for Mistrial*

First, Ingram argues that the trial court should have granted a mistrial based on Officer Coil's comments during the trial regarding a preliminary breath test. Under K.S.A. 22-3423(1)(c), the trial court may order a mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."

"A decision on a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion. [Citations omitted.] The defendant has the burden of showing substantial prejudice before an appellate court will find an abuse of discretion by the trial court. [Citation omitted.]" *State v. Manning*, 270 Kan. 674, 696, 19 P.3d 84 (2001).

There is nothing in the record to show that Officer Coil ever testified about a preliminary breath test that was given to Ingram. Instead, Coil referred to a "final test" during his testimony. Coil's comment was made in response to the prosecutor's question concerning his conversations with Ingram before Ingram's arrest. The following dialogue took place between the prosecutor and Coil:

Prosecutor: "You had some subsequent conversations with Mr. Ingram, at this time?"
Coil: "Yeah."
Prosecutor: "All right. This is before his arrest; is that right?"
Coil: "Yes, the final test that we give is a —"
Prosecutor: "All right."

Ingram later moved for a mistrial based on Coil's comment. Ingram argued that he had received only one other test which was

the preliminary breath test. Ingram pointed out that he had filed a motion in limine and the trial court had ordered that no reference be made to the preliminary breath test. The trial court determined that the mention of a test was not sufficient to grant a mistrial and denied Ingram's motion.

In addressing Ingram's argument, we note that the trial court is in the best position to decide if its order in limine was violated and determine the degree of prejudice a violation may have caused the defendant. Its decision will not be reversed unless the defendant can show a clear abuse of discretion. *State v. Whitesell,* 270 Kan. 259, 281, 13 P.3d 887 (2000). We find no abuse of discretion in the trial court's decision. Coil did not specifically refer to the preliminary breath test nor did he testify about the results that were obtained from this test. As pointed out by the City, Coil's nonresponsive answer was cut off by the prosecutor, and he did not mention the "final test" again. Ingram has failed to show substantial prejudice to him from Coil's comment. Thus, we uphold the trial court's denial of Ingram's motion for mistrial.

*Admission of Breath Test Results*

Next, Ingram contends that his breath test results were improperly admitted in this case because the foundational requirements for the proper certification of the Intoxilyzer machine were not met.

An appellate court's standard of review regarding the admission of evidence, subject to exclusionary rules, is limited to determining whether the trial court abused its discretion. *State v. Jenkins,* 272 Kan. 1366, 1378, 39 P.3d 47 (2002). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff,* 275 Kan. 20, 44, 59 P.3d 1003 (2002). Moreover, " '[w]hether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion. [Citation omitted.] So long as there is substantial competent evidence to support the finding, it will not be disturbed on appeal.' [Citation omitted.]" *State v. Rohr,* 19 Kan. App. 2d 869, 870, 878 P.2d 221 (1994).

To support his argument on this issue, Ingram cites to *Rohr*. There, the defendant argued that the State had not provided a proper foundation for the admission of the breath test results as the certification documents relating to the machine and to the administering officer had not been presented to the jury. The State had presented testimony from an officer that he had been certified as an operator of the machine and that the machine had also been certified. Quoting from *Lincoln v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 635, 639, 856 P.2d 1357, *rev. denied* 253 Kan. 859 (1993), the *Rohr* court stated: "The legislature has expressly found that, for breath test results to be reliable, the testing equipment, the testing procedures, and the operator of the equipment must all be certified." 19 Kan. App. 2d at 870. Noting that the better practice is for the State to submit the original documents of certification into evidence, the court determined that the officer's oral testimony was inadmissible to establish certification as it violated the hearsay and best evidence rules.

In his brief, Ingram maintains that the City failed to submit any documentation into evidence regarding the certification of the Intoxilyzer breath testing machine. At oral arguments, however, Ingram conceded that both the officer's certification and the machine's certification had been admitted at trial. A review of the record on appeal indicates that the certification for the Intoxilyzer machine issued by the Kansas Department of Health and Environment (KDHE) was admitted as Exhibit 4 at the jury trial. Moreover, before the breath test results were admitted into evidence, a copy of Officer Coil's certification card for the Intoxilyzer 5000 was admitted into evidence. Because the record indicates that the proper documentation was submitted into evidence, we determine that Ingram's argument on this issue lacks merit.

*Jury Instruction*

Next, Ingram asserts that the trial court improperly denied his request to instruct the jury regarding K.S.A. 8-1002(b).

"In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of the trial court to give a specific instruction, the evidence must

be viewed by the appellate court in the light most favorable to the party requesting the instruction. [Citation omitted.]" *State v. Williams*, 277 Kan. 338, 356, 85 P.3d 697 (2004).

"When reviewing challenges to jury instructions, this court must consider the instructions as a whole and not isolate any one instruction. ' "If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citations omitted.]" ' " *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

The particular instruction requested by Ingram follows the language of 8-1002(b) which states:

"For purposes of this section, certification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required. The signed certification or a copy or photostatic reproduction thereof shall be admissible in evidence in all proceedings brought pursuant to this act, and receipt of any such certification, copy or reproduction shall accord the department authority to proceed as set forth herein. *Any person who signs a certification submitted to the division knowing it contains a false statement is guilty of a class B nonperson misdemeanor.*" (Emphasis added.)

Ingram requested this instruction because of an inaccuracy regarding the date of the DC-27 form that was submitted as an exhibit at trial. The record on appeal does not contain the DC-27 form. Nevertheless, the prosecutor represented at trial that a statement within the form indicated that a copy of the DC-27 form had been served on Ingram on November 6. Coil testified that he had no contact with Ingram on November 6. The record indicates that the stop, arrest, and testing of Ingram actually took place on November 7.

The trial court denied Ingram's requested instruction. The trial court indicated that the requested instruction might be confusing to the jury. The trial court told defense counsel, however, that she could comment on the statute in closing argument.

We determine that the trial court properly refused to instruct the jury concerning K.S.A. 8-1002(b). The jury had not been empaneled to determine whether Coil was guilty of a misdemeanor under 8-1002(b). If such an instruction was given, it might have confused the jury as to its proper role in determining the actual guilt or innocence of Ingram.

Furthermore, Ingram was allowed to present his argument relating to K.S.A. 8-1002(b) to the jury. Ingram's counsel read to the jury during closing arguments the portion of 8-1002(b) that states: "Any person who signs a certification submitted to the division knowing it contains a false statement is guilty of a class B non-person misdemeanor." Ingram's defense counsel pointed out that Coil had certified under oath that he served Ingram the DC-27 form on November 6. Ingram's defense counsel argued that the City had not met its burden beyond a reasonable doubt concerning when the breath test was given to Ingram. Ingram's argument essentially relates to the credibility of a witness which is a question for the jury. See *State v. Poulos*, 196 Kan. 253, 264, 411 P.2d 694 (1966). Ingram was allowed to call Coil's credibility into question during closing arguments. We find no reversible error based on the trial court's denial of Ingram's requested jury instruction.

*Prosecutorial Misconduct*

Finally, Ingram contends that reversible error was committed when the prosecutor made improper comments during his closing argument. A two-step analysis is used to analyze allegations of prosecutorial misconduct. First, we must determine whether the comments were outside the wide latitude for language and manner that a prosecutor is allowed when discussing the evidence. The second step requires the court to decide whether the prosecutor's remarks constitute plain error, that is, whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny the defendant a fair trial, requiring reversal. *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 (2003).

An appellate court's standard of review is the same whether an objection was or was not made at trial. Reversible error based on prosecutorial misconduct must show the alleged error denied the defendant his or her right to a fair trial under the Fourteenth Amendment. *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003).

During closing arguments, the prosecutor stated that defense counsel was "simply arguing smoke and mirrors" and also made a comment about "[g]rasping at straws." In addition, the prosecutor

stated to the jury that "[o]bviously [defense counsel] thinks you're stupid." The prosecutor made this statement when commenting on defense counsel's argument that no evidence had been presented about the offense occurring in Dodge City. In responding to defense counsel's argument, the prosecutor remarked:

"If you ignore your common sense, you can go in the jury room and say, 'Are we in Dodge City, Kansas, or not?' You can do that if you choose to, but that isn't using your common sense.
*"Obviously, Mrs. Hess thinks you're stupid."* (Emphasis added.)

Defense counsel objected to this statement as improper argument. The trial court stated that it was improper but failed to instruct the jury to disregard the statement.

The prosecutor then told the jury that it was the "conscience of the community" and that it had to decide whether Ingram should be in the Intoxilyzer room where he belongs:

"You have to determine. You are the fact-finders. You are the conscience of the community. You have to determine whether or not a person, such as Mr. Ingram, should be out driving, *or whether he should be under arrest and in the Intoxilyzer room with Officer Coil where he belongs.* That is what you have to decide. You have to decide whether Officer — whether you're going to tell Officer Coil the next time he sees a person driving in that fashion —" (Emphasis added.)

Ingram again objected as improper argument, but the trial court overruled his objection.

The prosecutor then offered the jury this view:

"Next time he sees somebody driving in that fashion, and that he sees is that drunk and can't do field sobriety tests, can't stand up, can't even talk, and then agrees with 'em that, 'Yes, I failed the sobriety tests. Yes, I'm too drunk to drive. And, gee, I just wish I was back at my motel room,' whether you're going to tell Officer Coil to give the keys back to 'em and send him on his way. That's what you have to decide."

*I. First Prong—Were the prosecutor's comments outside the wide latitude allowed when discussing the evidence?*

Ingram fails to establish that the prosecutor's comments that defense counsel was "simply arguing smoke and mirrors" and was "[g]rasping at straws" rose to the level of prosecutorial misconduct. Although Ingram cites to *State v. Lockhart*, 24 Kan. App. 2d 488, 947 P.2d 461, *rev. denied* 263 Kan. 889 (1997), the panel's decision

there does not provide authority for reversing the instant case on grounds of prosecutorial misconduct. Ingram points out that the prosecutor in *Lockhart* had commented that defense counsel "had attempted to penetrate the facts with 'fog, smoke, or mirrors.' " 24 Kan. App. 2d at 490. Although this statement by the prosecutor is contained in the facts of that case, the *Lockhart* panel did not mention this comment when reversing the case. Instead, this court reversed based on the prosecutor's comments of referring numerous times to the defendant and defense counsel as liars. In this case, the prosecutor did not refer to Ingram or his counsel as a liar. Therefore, *Lockhart* does not support Ingram's argument.

Moreover, anticipating what the prosecutor would say in rebuttal, Ingram's counsel mentioned the smoke screen argument first. No prejudicial error occurs where the questionable statements by a prosecuting attorney are provoked and made in response to prior arguments or statements by defense counsel. *State v. McKinney*, 272 Kan. 331, 347, 33 P.3d 234 (2001). In *State v. Rodriguez*, 269 Kan. 633, 645, 8 P.3d 712 (2000), our Supreme Court held that the prosecutor's "puff of smoke" comments were not improper and were a proper response to defense tactics and arguments. Similarly, we determine in this case that the prosecutor's comments about "simply arguing smoke and mirrors" and "[g]rasping at straws," which were invited or provoked by defense counsel, were not improper and were not outside the wide latitude allowed when discussing the evidence.

The prosecutor concedes that his arguments that defense counsel thought the jury was stupid and that Ingram should be under arrest and in the Intoxilyzer room with Officer Coil where he belonged were improper. We agree that these arguments were improper. Prosecutors are instructed not to use arguments calculated to inflame the passions or prejudices of a jury. *State v. Duke*, 256 Kan. 703, 719, 887 P.2d 110 (1994). The prosecutor's comment that "[o]bviously [defense counsel] thinks you're stupid" was inflammatory and prejudicial as it implied that defense counsel was trying to make fools out of members of the jury. Moreover, the prosecutor's argument that Ingram should be under arrest was an improper expression of his opinion as to Ingram's guilt and also an

improper appeal to the jury's personal interest in the community. See *State v. Jordan*, 250 Kan. 180, 193, 825 P.2d 157 (1992) (prosecutor's closing argument improper where prosecutor expressed personal belief and appealed to juror's personal interests as member of community). As a result, the prosecutor's comments were outside the wide latitude allowed when discussing the evidence.

Therefore, our analysis turns to the second prong of the prosecutorial misconduct test. We must determine whether the comments were so gross and flagrant as to prejudice the jury against Ingram and deny him a fair trial, which would require reversal. In *State v. Tosh*, 278 Kan. 83, Syl. ¶ 2, 91 P.3d 1204 (2004), our Supreme Court clarified the analysis that is used under the second prong of the test for prosecutorial misconduct. A court must consider the following three factors: (1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will by the prosecutor; and (3) whether the evidence is direct and overwhelming so that the misconduct would likely have little weight in jurors' minds. None of these factors is individually controlling.

The City argues that the improper statements would not have had any likelihood of changing the result of the trial, based on the overwhelming evidence of guilt. The City's argument relates to the third factor under *Tosh*. The *Tosh* court, however, stated that "[b]efore the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), have been met." 278 Kan. 83, Syl. ¶ 2.

The harmless error analysis set forth in K.S.A. 60-261 instructs the court that it must disregard errors that do not affect the parties' substantial rights:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The harmless error rule under K.S.A. 60-261 echoes the federal harmless error rule from *Chapman*, 386 U.S. 18, "which requires a court to determine that an error was harmless beyond a reasonable doubt in that it had little, if any, likelihood of having changed the result of the trial." *Tosh*, 278 Kan. at 96.

We turn now to applying the harmless error tests to the prosecutor's comments in this case. We must examine the first factor under the second prong of the test for prosecutorial misconduct. This factor requires us to determine whether the misconduct was gross and flagrant. The prosecutor made the following observation to the jury: "Obviously, [defense counsel] thinks you're stupid." This comment was gross and flagrant because it suggested to the jury that defense counsel was attempting to prevent the jury from using its common sense. Moreover, as discussed previously, the comment implies that defense counsel was trying to make fools out of members of the jury.

In addition, the prosecutor pointed out to the jury that it was "the conscience of the community." The prosecutor went on to suggest that if the jury did not find Ingram guilty, this would prevent the arresting officer from stopping future drivers who are driving erratically. This argument was gross and flagrant because it was not based on the evidence and was made to appeal to the passion and prejudice of the jury.

Next, we must consider the second factor: whether the misconduct shows ill will by the prosecutor. The prosecutor's remark suggesting that defense counsel was attempting to obstruct the truth-seeking process of the jury was improper and showed ill will. Moreover, the prosecutor's appeal to the jury to find Ingram guilty so that the arresting officer would be willing to stop future drivers who are driving erratically showed ill will.

Under the third factor, we find that there was direct and overwhelming evidence of Ingram's guilt presented at trial. Ingram's breath test results were .216, well over two times the legal limit. According to Officer Coil, Ingram had a strong odor of alcohol, red and watery eyes, and slurred speech. In addition, Ingram failed all three field sobriety tests administered by Coil. Ingram even

admitted that he failed these tests and that he was too intoxicated to drive. Ingram also admitted that he had 6, 8, or 10 beers.

Nevertheless, under the facts of this case, we conclude that the harmless error tests of both K.S.A. 60-261 and *Chapman*, 386 U.S. 18, have not been met. The prosecutor's appeal to the jury to find Ingram guilty so that the arresting officer will stop drivers who are driving erratically in the future affected the substantial rights of Ingram. This appeal was calculated to inflame the passions and prejudices of the jury. The prosecutor's appeal implied that the arresting officer would be unwilling to stop future drivers who may be under the influence of alcohol if Ingram was acquitted. The trial court sanctioned the argument when it overruled Ingram's objection to it. The prosecutor continued the improper argument and stated:

"Next time he sees somebody driving in that fashion, and that he sees is that drunk and can't do field sobriety tests, can't stand up, can't even talk, and then agrees with 'em that, 'Yes, I failed the sobriety tests. Yes, I'm too drunk to drive. And, gee, I just wish I was back at my motel room,' whether you're going to tell Officer Coil to give the keys back to 'em and send him on his way. That's what you have to decide."

When the trial court failed to sustain Ingram's objection to the argument, the trial court gave its approval of the argument.

In *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993), a similar factual situation was presented to our Supreme Court. There, during closing arguments, the prosecutor urged the jury to "not allow [the defendant's alleged] conduct to be tolerated in our country." 252 Kan. at 631. When defense counsel objected to the comment, the trial court failed to sustain the objection and merely told the prosecutor: "Let's wind it up." 252 Kan. at 631. The prosecutor's last comment to the jury was to send a message that the defendant's alleged conduct would not be tolerated. Our Supreme Court found the comment to be improper. Nevertheless, our Supreme Court noted that the statement would not have been the basis for reversal if the trial judge had not approved the remark but, instead, had instructed the jury to disregard it. In reversing and remanding for a new trial, our Supreme Court stated that it was unable to con-

clude beyond a reasonable doubt that the prosecutor's misconduct did not deprive the defendant of a fair trial.

In the instant case, the trial court's action of overruling Ingram's objection gave the court's full endorsement of the argument as being true. In addition, the trial court failed to instruct the jury to disregard the prosecutor's improper comments. After reviewing our Supreme Court's decision in *Ruff*, we are unable to say beyond a reasonable doubt that the prosecutor's arguments concerning the protection of the community did not deprive Ingram of a fair trial.

Moreover, the prosecutor's suggestion that defense counsel thought the jury was composed of fools and lacked common sense was highly prejudicial. This suggestion placed defense counsel and Ingram in a very bad light before the jury. Its result was harmful and highly prejudicial. We determine that the magnitude of prosecutor's comments and statements substantially affected Ingram's right to a fair trial. No cautionary instructions were given to the jury to disregard these improper arguments. Although the evidence against Ingram was overwhelming, *Tosh* requires the reversal of Ingram's conviction.

Reversed and remanded for a new trial.